Viola Thomas ALFORD, Plaintiff in Error,

v.

Carl THOMAS, Defendant in Error.

William A. Berry, County Judge of Oklahoma County, Oklahoma, and L. D. Hoyt, Attorney, Ex Latere.

No. 37867.

Supreme Court of Oklahoma.

Oct. 1, 1957.

Hulsey & Hulsey, McAlester, for petitioner.

Little & Hoyt, Oklahoma City, for respondent.

JOHNSON, Justice.

This is an action growing out of a divorce proceeding. Carl Thomas was plaintiff, and Viola Thomas was defendant. The action was filed in the Pittsburg County District Court February 7, 1955. The case also involved the care and custody of their infant child, Sharon Sue Thomas, who is now four years old.

Various motions, applications, citations and modifications were heard by the local District Judge, W. A. Lackey, among which were orders modifying previous orders relating to the care and custody of Sharon Sue. At one time the father was given custody of the child; at another, September 19, 1956, the mother was awarded the care and custody of the child from 6:00 p. m. Sunday of each week until the following Saturday at 9:00 a. m., provided that the mother conducted herself properly and furnished a suitable place for said child; that during the period the child was with her mother the father was to have the right to visit the child at reasonable times and places; that during the time the child was with the father he was to see that she attended Sunday School, if physically able. The father was ordered to allot approximately $30 per month of his Social Security to the benefit of the child. This order further provided that the child should not be removed from Pittsburg County, and each parent was restrained from doing so.

On September 27, 1956, the father filed a motion to modify the last previous order,

alleging failure of the mother to comply with the terms thereof in that she had, among other things, taken the child out of the county to parts unknown. Upon the alleged failure to comply with the court's order, the mother was cited for contempt. The citation was served upon the mother, Viola Thomas, now Alford, on the 17th day of November, 1956, (by the sheriff of Pittsburg County) in person, and the sheriff took the child, Sharon Sue Thomas, from her mother at that time and delivered her to plaintiff. The cause came on for hearing on the 21st day of November, 1956, and Judge Lackey, upon hearing the cause as to the care and custody of Sharon Sue, entered an order modifying all previous orders and granted the father the exclusive care, custody, education and support of the child and restrained him from removing her from the state. It was further ordered that the mother should have the right to visit the child between the hours of two and four p. m. on Sunday of each week, and the defendant (mother) was restrained from molesting the plaintiff or attempting to deprive him of the custody of the child; and provided further that if the plaintiff (father) should attempt to remove the child from the City of McAlester, Oklahoma, he was to notify the defendant (mother) or her attorney of his location and whereabouts so that defendant (the mother) would know where to go to see the child.

Thereafter defendant filed an application for citation for contempt of court and motion to modify the above order as to the custody of Sharon Sue, alleging, among other things, the unfitness of the father to have her care and custody, and that he had violated the previously mentioned order by removing her from the City of McAlester without notifying the defendant or her attorney of the child's whereabouts so that she could visit her; that when inquiry was made as to the whereabouts of the child, the attorney for plaintiff informed defendant's attorneys that plaintiff had taken the child to Oklahoma City and turned her over to the county judge of that county for secret adoption; that on the 7th day

of March, 1957, upon this application, Judge Lackey issued an order requiring plaintiff to appear before him and show cause, if any he had, why he should not be held for trial on complaint of indirect contempt of court, and to show cause, if any, why the order giving the care and custody of the child to him should not be modified so as to give the exclusive custody of said child to the defendant, ordering the plaintiff to appear before the court on March 14, 1957, at 10:00 a. m.

The plaintiff, Carl Thomas, filed a response in which he denied generally all the defendant's allegations, but admitted that he had been given the exclusive care of their child with certain visiting privileges of the mother. He denied that he had ever wilfully violated the order of the court, but stated that at the time of the making of the order of November 19, 1956, his attorney stated in open court in the presence of the defendant and her attorney that under the terms of said order plaintiff had the right to adopt said child to other parties, and that he would attempt to see that same would be done so that the child could have a suitable home; that thereafter attorney for defendant told plaintiff that it would be the best thing in the world for the child that she be placed in a good home; that if he himself were not in such financial straits that he would walk out of the case; that acting upon the advice of his own attorney and defendant's attorney, plaintiff did sign consent to the adoption of said child and delivered the child to a man whom he understood to be a Baptist minister at Oklahoma City and signed consent to the adoption prepared by an Oklahoma City attorney, further stating that there had been no change of condition, and that the child's mother was unfit to have the care and custody of the child; that he had reared said child and lavished affection and care upon her, and only through his extreme love for her was he willing that that she be adopted into a Christian home.

Thereupon, Judge Lackey on his own motion made an order certifying his disqualification to sit in the cause.

For answer to the response filed by plaintiff, defendant denied that she authorized her attorney to make any statement relative to what was for the best interest of her child; that her attorneys blamed her for the fact that she had been guilty of violating the order of the court in taking the child to Dallas, Texas, without first filing for a modification of the order of custody, and that there was no other reason for her being held in contempt of court, or of being an unfit person to have custody of her child; that plaintiff concealed the whereabouts of the infant child in violation of the order of the court allowing her permission to visit her; that, as a consequence, he should be held not only in contempt of court but tried on complaint charging kidnapping and show cause why he should not bring Sharon Sue before the court for disposition as to her custody.

The cause was presented on the 26th day of March, 1957, before John Boyce McKeel, assigned District Judge.

The evidence in the trial consisted of the oral testimony of three witnesses and certain exhibits. The plaintiff testified for himself, and the defendant and her father in behalf of the defendant.

The assigned judge ruled that neither the father nor the mother were fit persons to have the care and custody of Sharon Sue, and held that under Judge Lackey's order of November 21, 1956, the father had the right to sign the consent for adoption, and that in his opinion it was to the best interest of the child that adoption be made, stating that he had confidence in the Juvenile Court of Oklahoma City and didn't believe that she would be adopted out to some family unsuitable to raise her; and found that the plaintiff was not guilty of contempt of court for having taken the child out of the City of McAlester in violation of the order of November 21, 1956, for the purposes of adoption.

This cause is before us on petition in the nature of an application for a writ of habeas corpus for the possession of an infant (four-year-old) child, Sharon Sue

Thomas, and under the peculiar circumstances in this case we shall treat the petition as one in habeas corpus.

The record before us was taken in the trial court which made the order about which petitioner complains, and upon oral presentation of this application, the parties agreed that such record may be considered in the disposition of this application.

Respondents, however, in their answer brief, seek dismissal of this action on the grounds that it is an appeal which was not brought within the time and manner provided by law.

■ If considered as an appeal, this argument would be sustainable; but, since the proceeding is in the nature of an application for a writ of habeas corpus, a summary proceeding, the rules governing appeals will not be applied.

■ As applied to infants, the primary object of such proceedings is to determine in whose custody the best interests of the child will probably be advanced, and the speedy determination thereof should not be hindered or delayed, or extended by attempting to determine collateral issues. 25 Am.Jur., Habeas Corpus, secs. 80, 81 and 82. See, also, Annotations, 16 A.L.R. 699. Furthermore, an order for the custody of a minor child in a habeas corpus proceeding, or proceeding in the nature thereof, is subject to any future order affecting the best interest and welfare of the infant. Black v. May, 152 Okl. 160, 4 P.2d 17; and, moreover, a reviewing court, in proceedings involving custody of a (four-year-old) child will act for the best interest of such child under the disclosed facts of each case, Ex parte Sloan, 147 Okl. 164, 296 P. 398, and disregard legalistic requirements when examining applications for writs of habeas corpus and judge the papers by the simple test of whether facts are alleged that entitle applicant to relief. Darr v. Burford, 339 U.S. 200, 70 S. Ct. 587, 94 L.Ed. 761, and cited cases.

■ The record fails to conclusively show that the mother was an unfit person to have the custody of her child as of the

date of the last hearing before the assigned judge. The record discloses that the assigned judge based his order upon his personal opinion, and upon prior orders of the disqualified judge, as to what would be for the best interest of the child. This did not constitute a proper basis to determine what was for the best interest of the child or the fitness of a parent to have the care and custody of a child. McVey v. Chester, Okl., 288 P.2d 740, and cited cases.

■ The order of the court granting the father the exclusive care, custody and education of the child, with visiting privileges of the mother, was subject to change or further order of the court. The record further discloses that the father admitted in his response and testimony that he had violated the order by taking the child to Oklahoma City for the purpose of adoption by persons unknown to him, without the consent or permission of its mother, petitioner herein, and he refuses to divulge the child's whereabouts, stating that he does now know where the child could be found.

■ His actions were based upon his personal opinion that it was for the best interest of the child. Thus, the father has relinquished his right to the child and divested himself of the care and custody of the child, which, but for the outstanding continuing order of the court, which he admittedly violated, and the natural, constitutional and statutory rights of the mother, he had a right to do.

■ The best of intentions toward what he thought was for the best interest of the child may inhere in his actions, but that does not preclude the natural mother from asserting her parental claims to the care and custody of her four-year-old daughter, until after a conclusive showing and judicial determination have been made as to her unfitness and that by reason thereof the best interest of the child required that she be placed in the custody of someone else.

The attorney for the father and parties ex latere, in responding to counsel for petitioner's statement in his oral presentation of the application for a writ of habeas corpus, stated that the child had not been adopted and would not be pending the outcome of this action; that she was located in this state, where she would remain, subject to this decision.

■ It has long been the rule of this Court that the parents have by nature, as well as by law, the legal right to the custody of their minor children. This right will always control the judgment of the courts, unless circumstances of great weight and importance connected with the necessary welfare of the child exists to overcome such strict legal right. Bishop v. Benear, 132 Okl. 116, 270 P. 569. Such circumstances do not exist in the present case.

For the reasons stated above, the writ is granted for the purpose of restoring to the mother the custody of her infant child, Sharon Sue Thomas.

WELCH, C. J., CORN, V. C. J., and DAVISON, HALLEY, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

JACKSON, J., dissents.