2003 OK 58

**Holly Suzanne INGRAM, Plaintiff/Appellee,**

v.

**John Michael KNIPPERS, Defendant,**

**John C. Knippers, Third Party Defendant/Appellant.**

No. 96,331.

Supreme Court of Oklahoma.

June 3, 2003.

Sharon L. Corbitt, Corbitt & Johnson, P.C., Brian S. Gaskill, Sneed Lang, P.C., Tulsa, OK, for the Appellant.

Mark A. Zannotti, Tulsa, OK, for the Appellee.

HODGES, J.

¶ 1 The issues before this Court are: (1) whether the district court erred in refusing grandparent's request to enforce a consent visitation order, (2) whether the district erred in treating mother's motion to terminate visitation as an objection to request for enforcement of grandparental visitation, (3) what are the standards for terminating or modifying a consent decree granting grandparental visitation, and (4) who should bear the burden of proof in modification proceedings.

## I. FACTS

¶ 2 Laine Christian Ingram (Child) was born on May 12, 1995, to Holly Suzanne Ingram (Mother) and John Michael Knippers (Father). The parents never married and live in separate households. Mother filed a petition against Father seeking custody and child support. On December 2, 1997, the district court awarded custody of Child to Mother, set a visitation schedule for Father, and fixed the Father's monthly child support obligation.

¶ 3 On June 2, 2000, Child's paternal grandfather, John C. Knippers (Grandfather), filed a motion to intervene and for visitation. Grandfather alleged that he had been involved in Child's life since birth, that he had provided financial and other support for both Child and Mother, that grandparental visitation would be in Child's best interest, and that Grandfather had unsuccessful attempted to effect visitation through his direct contact with Mother.

¶ 4 Pursuant to an agreement, the district court entered an order on November 29, 2000, allowing visitation between Child and Grandfather. The schedule covered October and November of 2000. The parties agreed and the court ordered that further visitation would be as recommended by Child's counselor.

¶ 5 In December of 2000, Mother unilaterally terminated Grandfather's visitation with Child. Mother did not seek court approval before terminating the visitation. Grandfather filed a motion to enforce his visitation rights, alleging that Mother had unreasonably interfered and denied him visitation. He requested an order setting a specific visitation schedule, requiring Mother to post a bond, and awarding him costs and attorney fees.

¶ 6 Mother then filed a motion seeking to terminate Grandfather's visitation. She argued that courts may not order grandparental visitation absent a showing that the custodial parent is unfit or that the child will suffer harm if the visitation is not allowed. She did not allege that termination of Grandparent's visitation was in Child's best interest. Even though Mother specifically requested that the visitation be terminated and that Grandfather's motion be denied, the district court treated Mother's motion only as an objection to Grandfather's motion to enforce visitation. Grandfather then filed an application for a contempt citation for Mother's unilateral action terminating Grandfather's visitation in contravention of the November 20, 2000 order. He requested reinstatement of the order, Mother's incarceration, and an award of costs and attorney fees.

¶ 7 At a hearing on the motions, the district court placed the burden of proof on Grandfather to show Mother's unfitness or potential harm to Child. Grandfather presented the testimony of Child's counselor that termination of grandparental visitation would result in harm to Child. Mother did not allege or present any evidence that there had been a substantial change of circumstances or that terminating visitation would be. in Child's best interest. On April 30, 2001, the district court entered an order denying Grandfather's motion to enforce his visitation, effectively terminating Grandfather's visitation and mooting the remaining issues.

¶ 8 Grandfather appealed. Mother has not submitted an appellate brief even though she was given opportunity to do so. Only Grandfather's brief was before the Court of Civil Appeals and is before this Court. The Court of Civil Appeals concluded that this Court's opinion in *Scott v. Scott*, 2001 OK 9, 19 P.3d 273, controlled. Rejecting the district court's reliance on *Neal v. Lee*, 2000 OK 90, 14 P.3d 547, and *In re Herbst*, 1998 OK 100, 971 P.2d 395, the Court of Civil Appeals found that the controlling factor of the present case was the procedural posture which was akin to that in *Scott*.

¶ 9 Mother petitioned for certiorari. This Court granted certiorari and now clarifies the standard and burden of proof necessary in proceedings to enforce agreed court-ordered grandparental visitation and to clarify the standard and burden of proof required to modify a grandparental visitation order. We do not address a scenario where a grandparent is attempting to expand visitation beyond what was agreed to by a parent. These facts are not before this Court.

## II. *HERBST, SCOTT, AND NEAL*

¶ 10 Title 10, section 5 of the Oklahoma Statutes allows a court to grant grandparental visitation with an unmarried minor grandchild under certain circumstances if the court deems it to be in the child's best interest. In *Herbst*, this Court held section 5 to be unconstitutional to the extent it permitted district courts to grant grandparental visitation over the objection of fit parents without a showing of potential harm to the child when the family is intact. This Court extended *Herbst* to apply when the children are living with one parent and the other parent is deceased. *Neal*, 2000 OK 90, 14 P.3d 547.

¶ 11 Then in *Scott*, this Court held that termination of an existing grandparental visitation order based on agreement of the parties is not subject to collateral attack in a modification proceeding but that the moving party is required to show a change in circumstances adversely effecting the child's best interest such that a change in visitation would improve the child's temporal, moral and mental welfare. *Scott*, 2001 OK 9 at ¶ 5, 19 P.3d at 275. Unlike *Neal* and *Herbst*, the child in *Scott* was adopted. However, this was not a factor in this Court's decision. Adoptive parents have no lesser rights than biological and single parents. Further, the remand in *Scott* was based on the district's court failure to follow statutory procedures required by title 10, section 5.[1]

## III. ENFORCEMENT AND STATUS OF AGREED GRANDPARENTAL VISITATION ORDER

¶ 12 Mother claims: (1) the statute which allowed the initial grant of grandparental

---

1. The United States Supreme Court has not addressed the issue presented by this appeal. Further, this Court's resolution of the issues does not contravene any of the United States Supreme Court's jurisprudence. The United States Supreme Court addressed the issue of grandparental visitation in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In *Troxel*, the grandparents were seeking more visitation than the parent was willing to grant. The United States Supreme Court required that at a minimum, the trial court give weight to the parent's wishes regarding visitation by a non-parent, including a grandparent, and held that there is a presumption that a parent will act in the child's best interest and that the grandparents have the burden to overcome the presumption. It should be noted in *Troxel* that the parent was not seeking to modify or terminate an existing visitation order as in the present case. Consistent with *Troxel*, this Court held that the Oklahoma Constitution requires that a grandparent seeking visitation over the objection of fit parents must show that a denial of grandparental visitation would result in potential harm to the child.

In *Dodge v. Graville*, 533 U.S. 945, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001), the United States Supreme Court summarily granted certiorari, vacated the judgment of the Court of Appeals of Arizona, and remanded "for further consideration in light of *Troxel*. ..." In *Graville v. Dodge*, 197 Ariz. 591, 5 P.3d 925 (Ariz.Ct.App. 2000), the grandparents were seeking a contempt citation. After a hearing, the trial court entered an order modifying the original visitation by appointing a counselor to supervise and facilitate visitation. The "review was limited to determining whether the trial court abused its discretion by modifying the visitation order through the appointment of a supervision psychologist." *Id.* at 929 n. 2 (emphasis added). Unlike in *Granville*, the grandfather in the present case is not seeking new requirements be added to the original visitation order.

The United States Supreme Court recently denied certiorari in two grandparental visitation cases. *McGovern v. McGovern*, 201 Ariz. 172, 33 P.3d 506 (Ct.App.2001), *cert. denied*, 536 U.S. 959, 122 S.Ct. 2663, 153 L.Ed.2d 837 (2002); *Jackson v. Tangreen*, 199 Ariz. 306, 18 P.3d 100

visitation required a showing of harm to Child or parental unfitness; (2) the Grandfather failed to meet his burden of showing harm; (3) the visitation should not have been granted, and (4) she should be allowed to unilaterally terminate the visitation. The problem with Mother's claim is that the initial visitation was a consent order entered after Mother and Grandfather had reached an agreement. Because Mother consented to the initial visitation, the order was not entered under authority of title 10, section 5, and Mother's rights were not infringed by the order. Further, visitation order is not now subject to collateral attack on the ground that title 10, section 5 is unconstitutional.

¶ 13 Even if the grant of grandparental visitation had been pursuant to title 10, section 5, the order is not subject to collateral attack on the grounds that section 5 was declared unconstitutional. A judgment based on a statute which is later declared unconstitutional "is not void so as to be subject to collateral attack" but at most voidable and subject only to direct attack. *Fitzsimmons v. City of Oklahoma City*, 1942 OK 422, ¶ 8, 135 P.2d 340, 343. Applying this rule, a grant of grandparental visitation made under the authority of section 5 is "voidable and subject to direct attack, but it [is] not void so as to be subject to collateral attack." *Fitzsimmons*, 1942 OK 422 at ¶ 8, 135 P.2d at 343; *see Scott*, 2001 OK 9, 19 P.3d 273.

¶ 14 A judgment based on an agreement of "the parties is enforceable and valid even though it does what a trial court cannot [otherwise] do, provided the agreement does not contravene public policy." *Whitehead v. Whitehead*, 1999 OK 91, ¶ 10, 995 P.2d 1098, 1101. Nothing in title 10, section 5 or this Court's jurisprudence prevents a court from granting grandparental

visitation when the parties agree to the visitation. Mother has failed to present any convincing argument that the grandparental visitation order was void such that it is subject to collateral attack in an enforcement proceeding.

¶ 15 The Legislature has enacted procedures in title 10, section 5(E) that a district court must follow before acting on a motion to enforce grandparental visitation. Section 5(E)(2) requires the court to direct mediation and enter an order. If the parties reach an agreement, the order shall memorialize the parties' agreement. The court may sanction the parent by assessing reasonable attorney fees, mediation costs, and court costs and ordering "any other remedy the court considers appropriate" including finding the parent in contempt of court. Okla. Stat. tit. 10, § 5(E)-(F). However, because Grandfather filed a motion for enforcement of his visitation rights, the court must follow the procedure outlined in title 10, section 5(E) requiring that the court direct the dispute to mediation and that the mediator file a record of mediation termination along with any agreement reached by the parties. Thus, Grandfather's motion to enforce should have been granted subject to the outcome of Mother's motion to terminate and the procedures set out in title 10, section 5(E).

## IV. MOTION TO TERMINATE GRANDPARENTAL VISITATION

¶ 16 The district court treated Mother's motion to terminate grandparental visitation as a response to Grandfather's motion to enforce. Because Mother not only responded to Grandfather's motion but also sought relief distinct from Grandfather's, the court should have cast Mother's motion both as a response to Grandfather's motion to

(Ct.App.2000), *cert. denied*, 534 U.S. 953, 122 S.Ct. 351, 151 L.Ed.2d 265 (2001). A denial of certiorari has no precedential effect and is not a statement of law regarding the merits of the case. *Hopfmann v. Connolly*, 471 U.S. 459, 461, 105 S.Ct. 2106, 85 L.Ed.2d 469 (1985). "Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be grant-

ed, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review." *State of Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 919, 70 S.Ct. 252, 94 L.Ed. 562 (1950) (opinion of Frankfurter, J., regarding the denial of a petition for certiorari.).

enforce visitation and as a motion to terminate the visitation.

¶ 17 In *Scott*, 2001 OK 9, 19 P.3d 273, the mother sought to have a grandparental visitation order modified. She did not appeal the initial grant of visitation but collaterally attacked the order in the modification proceeding. The initial visitation order was entered after the biological father's rights were terminated and the stepfather had adopted the child. The case was remanded to the district court for failure to hold a hearing pursuant to title 10, section 5 of the Oklahoma Statutes. This Court reiterated that the burden was on the party seeking modification to show a change in circumstances adversely effecting the best interest of the child such that the welfare of the child would be improved by modification of the initial order. *Id.* at ¶ 5, 19 P.3d at 275.

¶ 18 The "change of circumstance" requirement is akin to the doctrine of res judicata and furthers the same policy considerations. *Boatsman v. Boatsman*, 1984 OK 74, ¶ 15, 697 P.2d 516, 519. The "change of circumstance" requirement accords "some degree of finality to factual and legal determinations made in [child] custody matters, which if absent would lead to constant relitigation of matters already determined." *Id.* The "change of circumstance" requirement assures that the same claims available in a previous visitation proceeding will not be subjected to continual relitigation. A consent judgment is entitled to the same preclusive treatment as a contested judgment. *Id.* Just as claim preclusion "teaches that a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided in that action," the "change of circumstances" requirement is a safeguard to prevent relitigation of issues which had been decided or could have been decided by a prior visitation order. *Read v. Read*, 2001 OK 87, n. 18, 57 P.3d 561, 567 n. 18.

¶ 19 Mother seeks here to litigate issues which could have been litigated in the initial proceeding. While a fit parent contesting grandparental visitation is entitled to

a presumption that the parent will act in the best interest of the child, *Neal*, 2000 OK 90, 14 P.3d 547, a court will not modify a valid visitation order without the moving party first showing a substantial change of circumstances. *Scott*, 2001 OK 9 at ¶ 5, 19 P.3d at 275. Having agreed to the initial grant of visitation with Grandfather, Mother cannot in this subsequent proceeding litigate the issue of harm without showing a change in circumstances and Child's best interest will be served by terminating the visitation.

¶ 20 The district court should have considered Mother's motion as a request to terminate grandparental visitation. On remand, the district court should conduct a hearing on Mother's motion to terminate. The burden is on Mother, as the moving party, to first show a change of circumstances and to then show that termination of the visitation would be in Child's best interest. The district court should consider all relevant factors in determining the Child's best interest giving due regard for Mother's interest in raising her child. Mother must present evidence more than that she simply has changed her mind and does not wish Grandfather to have any contact with Child.

¶ 21 We believe our decision protects a parent's right to custody and control of a child without ignoring the child's best interest. "Having once protected the parent's right to custody [and control of a child], at the risk of sacrificing the child's best interests, we should not then sacrifice the child's need for stability in its care and living arrangements by modifying those arrangements more readily than in a parent-parent case." *C.R.B. v. C.C.*, 959 P.2d 375, 380 (Alaska 1998) (emphasis omitted).

## V. CONCLUSION

¶ 22 The district court should have considered Mother's motion as one to terminate grandparental visitation placing the burden on Mother to show a change of circumstances and to show that a modification would be in Child's best interest. If the district court finds that there has not been a change of circumstances or that termination is not in Child's best interest, it should consider

Grandfather's motion to enforce visitation pursuant to the initial grant of visitation and follow the procedures set out in title 10, section 5(E). Whether or not the district court determines to continue or terminate grandparental visitation, Mother has failed to show that the initial order granting grandparental visitation was void.

¶ 23 The Court of Civil Appeals' opinion is vacated. The judgment of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.

COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CAUSE REMANDED.

¶ 24 OPALA, V.C.J., HODGES, LAVENDER, HARGRAVE, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

¶ 25 WATT, C.J., (joins KAUGER, J.), KAUGER, J. (by separate writing), dissent.

KAUGER, J., with whom WATT, C.J. joins dissenting.

¶ 1 I dissent from today's opinion as I did in *Scott v. Scott,* 2001 OK 9, 19 P.3d 273 regarding a fit parents' fundamental right to the care, custody and control of children in situations involving attempts to alter or to discontinue previously agreed-to or court-ordered grandparental visitation. Neither *Scott* nor today's cause can be reconciled with the United States Supreme Court's most recent pronouncement on grandparental visitation—*Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)—or with it's treatment of subsequent causes.

¶ 2 I write separately to emphasize that: 1) Supreme Court jurisprudence requires, when considering the best interest issue, the trial court accord some special weight to the mother's own determination of her child's best interest and that it presume, as a fit parent, she will act with those interests in mind;[1] and 2) to demonstrate that the Supreme Court's post-*Troxel* jurisprudence signals that imposing a heightened standard on parents who have previously allowed grandparental visitation is a violation of the parents' constitutionally protected fundamental right to make decisions concerning with whom and when visitation with a non-parent will occur.

¶ 3 THE SUPREME COURT'S PRONOUNCEMENT IN *TROXEL v. GRANVILLE,* AND ITS SUBSEQUENT CONSIDERATION OF CAUSES INVOLVING GRANDPARENTAL VISITATION MANDATE THAT *SCOTT v. SCOTT* BE OVERRULED AND THAT THE TRIAL COURT'S DECISION IN FAVOR OF THE FIT MOTHER BE AFFIRMED.

¶ 4 This Court visited the issue of grandparental visitation in a modification proceeding in *Scott v. Scott,* 2001 OK 9, 19 P.3d 273 holding that a parent could alter court-ordered visitation only through a showing of changed circumstances. In reaching it's result the majority distinguished the United States Supreme Court's most recent pronouncement on grandparental visitation—*Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)—without discussing the opinion's implications.[2] In doing so, the majority essentially declared that a parent who voluntarily agreed to grandparental visitation was from that day shorn of parental status and relegated to a station no better than that of a non-parent when seeking to modify a visitation order.

¶ 5 Although state law may afford greater rights than those guaranteed by the sovereign, it may not curtail rights guaranteed by federal law or the United States Constitu-

---

1. *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 2060–62, 147 L.Ed.2d 49 (2000).

2. The majority's entire discussion of *Troxel v. Granville,* see note 1, supra, is found in *Scott v. Scott,* 2001 OK 9, ¶ 4, 19 P.3d 273 providing: "In *Troxel v. Granville,* the United States Supreme Court reviewed an order granting grandparent visitation. In the cases of *In re Herbst* and *Neal v. Lee,* this Court discussed the requirements for granting grandparent visitation. In all of these cases, the appeal was taken from an initial grant of grandparent visitation. These cases are not applicable in this appeal because here an order refusing to terminated court-ordered visitation is under attack." [Footnotes omitted. Emphasis in original.]

tion.[3] By virtue of the Supremacy Clause, this Court is bound by the decisions of the United States Supreme Court with respect to the federal constitution and federal law.[4] When the Supreme Court, as the final arbiter of the United States Constitution, has spoken, the only course for this tribunal is to follow the decree [5]—we must pronounce rules of law that conform to extant Supreme Court jurisprudence.[6]

¶ 6 The United States Supreme Court addressed the issue of parental rights in determining grandparental visitation in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Although *Troxel* is a plurality opinion, the discussion here is predicated on what a majority of the United States Supreme Court concluded. The judgment was announced by Justice O'Connor who was joined by Chief Justice Rehnquist and Justices Ginsburg and Breyer. Justices Souter and Thomas filed opinions concurring in the judgment and Justices Stevens, Scalia and Kennedy dissented. Justice Souter's reasoning departed from Justice O'Connor's opinion in that he would have facially invalidated the Washington statute in the same manner as the Washington Supreme Court did. Justice Thomas initially noted his reservations about substantive due process jurisprudence generally but concurred in the judgment because the parties did not ask the court to overrule its precedent holding that parents have fundamental rights to raise their children. He also noted that none of the opinions set out a standard of scrutiny to which courts should hold nonparental visitation statutes. He urged state courts to apply strict scrutiny to these statutes in the same manner as the Washington Supreme Court had.

¶ 7 In short, six Justices agreed that the decision of the Washington Court finding the grandparental visitation statute unconstitutional should be affirmed. Eight Justices agreed that the Fourteenth Amendment protects a parent's right to raise his or her child without undue interference from government. **Five Justices agreed that a fit parent is accorded a presumption that the parent acts in the child's best interests.** Four Justices agreed that "special factors" must "justify" the state's intrusion, and that one of those factors is a finding of parental unfitness.

¶ 8 When an opinion is delivered by a divided United States Supreme Court, the rule for determining the holding of the Court is laid down in *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) in which the Court said:

> "... When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds...."

In a judgment upholding a statute, the narrowest grounds are those which uphold the fewest statutes as constitutional. Conversely, when the rule is applied to striking down a statute, the narrowest grounds are those invalidating the fewest statutes as unconstitutional.[7]

¶ 9 In *Troxel*, the majority held Washington's Grandparental Visitation Rights Act [8]

---

**3.** *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

**4.** We are bound under the United States Const. art. VI, cl. 2 and the Okla. Const. art. 1, § 1 to follow the United States Constitution as the supreme law of the land. We are required by 12 O.S. § 2001 2201(A) to take judicial notice of the United States Constitution and the Constitution of the State of Oklahoma.

**5.** *In re Initiative Petition No. 349, State Question No. 642,* 1992 OK 122, ¶ 12, 838 P.2d 1.

**6.** *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 30, 977 P.2d 1040.

**7.** *In re Initiative Petition No. 349, State Question No. 642,* see note 5, supra.

**8.** In *Troxel v. Granville,* see note 1, supra, the Court considered RCS 26.10.160(3) providing:

> "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances."

unconstitutional as applied because of its broad scope—allowing any person to petition for visitation at any time. The high court was specifically concerned that the Washington statutory scheme failed to accord a fit parent's wishes any special weight and that it did not recognize a parent's heightened interest in deciding the child's best interest.

¶ 10 The language of the high court in relation to parental decision making is particularly poignant. When describing the issue of parental rights the Supreme Court stated:

> "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court ... 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " [at p.2059]

Concerning the presumptions involving admittedly fit parents, the opinion provides:

> "Accordingly, so long as a parent cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." [at p.2060]

As to the weight which should be given to a parent's decision on grandparental visitation, the Supreme Court determined that the decision as to whether an intergenerational relationship would be beneficial in any specific case is "for the parent to make in the first instance." The high court explained the deference given to decisions of a fit parent writing:

> "And, if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." [at p.2062]

¶ 11 *Troxel* has been determined to displace traditional "best interests" tests requiring instead that "significant weight" be given to a biological parent's fundamental right to determine the care, custody and control of children. Under the opinion, more traditional standards are replaced with a test in which a fit biological parent will presumptively prevail over a nonparent unless the nonparent presents compelling reasons overcoming the presumption.[9]

¶ 12 In *Scott v. Scott*, 2001 OK 9, ¶ 5, 19 P.3d 273, the majority determined that a party seeking termination of existing court-ordered grandparental visitation had the burden of showing a change in circumstances demonstrating that it was in the child's best interest for grandparental visitation to be modified or terminated. The *Scott* majority determined that *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) was inapplicable because it did not involve an attack on court-ordered grandparental visitation.[10] In doing so, it did not cite extant jurisprudence on the issue nor did it consider the Supreme Court's subsequent rulings on the grandparental visitation issue.

¶ 13 Courts are divided on whether visitation challenged following either court-ordered or agreed-to grandparental visitation requires that parental decisions on the matter be given the special weight required by *Troxel*.[11] The better reasoned opinions, and

9. *State v. Wooden,* 184 Or.App. 537, 57 P.3d 583 (2002).

10. See note 2, supra.

11. Jurisdictions not requiring special interest considerations for parental decisions on modification: *Currey v. Currey,* 2002 SD 98, ¶ 18, 650 N.W.2d 273 [Where grandparental visitation arises by agreement, trial court must consider child's best interests rather than constitutionality of visitation statute.]; *Rubano v. DiCenzo* 759 A.2d 959 (2000) [By agreeing to and signing order granting permanent visitation, parental rights became less exclusive and less exclusion-ary.]; *Brinkley v. Flatt,* 256 Ga.App. 263, 568 S.E.2d 95, 97 (2002) [Court declined to consider constitutionality of original order.]; *In re Guardianship of K.T.,* 743 N.E.2d 348 (Ind.App.2001) [Modification allowed whenever shown to be in child's best interest.].

Jurisdictions imposing some special weight on parental decisions in modification proceedings: *Jackson v. Tangreen,* see note 13, infra [Statutory scheme required parental decision be given special weight.]; *Kyle O. v. Donald R.,* 85 Cal. App.4th 848, 102 Cal.Rptr.2d 476 (2000) [Even where some form of court-ordered visitation ex-

those with which it appears the Supreme Court would find favor, follow the guidelines established in *Troxel*—determining that it is unconstitutional to fail to give a fit parent's decision some special weight and to shift the burden to the parent to avoid the imposition of visitation.[12]

¶ 14 Particularly instructive on modification of grandparental visitation issues following *Troxel* are causes brought to the high court's attention. The Supreme Court has refused to revisit opinions in which parental decisions are given some special weight in modification proceedings—denying certiorari.[13] Nevertheless, in *Graville v. Dodge*, 197 Ariz. 591, 5 P.3d 925, *cert. granted, judgment vacated*, 533 U.S. 945, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001), the Supreme Court granted certiorari and vacated the opinion.

¶ 15 The Arizona Supreme Court determined in *Dodge* that a contempt order issued when the father attempted to discontinue court-ordered grandparental visitation did not infringe upon the father's constitutional rights to custody and control of his children. After granting certiorari, the Supreme Court reversed and remanded the cause specifically for reconsideration in light of *Troxel*.[14] *Dodge* provides a clear signal that the presumption in favor of a parent's right to decide applies even in modification proceedings.

Although *Troxel* may be characterized as a plurality opinion, a majority of the Supreme Court has determined that it is necessary for inferior courts to follow its guidance on the special weight to be given a fit parent's decision regarding grandparental visitation.[15]

¶ 16 By virtue of the Supremacy Clause, this Court is bound by the decisions of the United States Supreme Court with respect to the federal constitution and federal law, and we must pronounce rules of law that conform to extant Supreme Court jurisprudence.[16] *Troxel* and its progeny require us to presume that a fit parent will make decisions based on a child's best interest and to give some special weight to that decision. The majority's decision here and in *Scott*—requiring an admittedly fit parent to show a change of circumstances demonstrating that a discontinuance or alteration in grandparental visitation are in the child's best interest—ignore *Troxel's* teachings by impermissibly shifting the burden to the parent.

## CONCLUSION

¶ 17 Some cases hit closer to home than others. Deciding whether grandparents should have visitation with their grandchildren over the objection of a parent is the type of case that tugs at the heart because one harbors either personal experiences with

ists, special weight should be given to fit parent's decision.].

See also, *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841, 856 (2002) [Procedural preference placing burden of proof on parents in first instance unconstitutional.]; *Zasueta v. Zasueta*, 102 Cal.App.4th 1242, 126 Cal.Rptr.2d 245, 253 (2002) [Placing evidentiary burden on parent to show visitation not in child's best interest unconstitutional.]; *In re Custody of C.M.*, 2002 WL 31116773, 74 P.3d 342 (Colo.App.2002) [Not released for publication but holding that in a modification of grandmother's visitation, mother's decision on visitation must be accorded some special weight.]; *Ex parte State of Alabama*, 826 So.2d 178 (Ala.App.2002) [Rebuttable presumption in favor of grandparent visitation over contrary decision by parent sufficient to render grandparental visitation statute unconstitutional.].

12. *Kyle O. v. Donald R.*, see note 11, supra.

13. *McGovern v. McGovern*, 201 Ariz. 172, ¶ 18, 33 P.3d 506 (2001), *cert. denied*, 536 U.S. 959, 122 S.Ct. 2663, 153 L.Ed.2d 837 (2002); *Jackson*

*v. Tangreen*, 199 Ariz. 306, 18 P.3d 100 (2000), *cert. denied*, 534 U.S. 953, 122 S.Ct. 351, 151 L.Ed.2d 265 (2001).

14. *Graville v. Dodge*, 197 Ariz. 591, 5 P.3d 925, *cert. granted, judgment vacated*, 533 U.S. 945, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001). In *Graville*, the Supreme Court wrote:

"On petition for writ of certiorari to the Court of Appeals of Arizona, Division One. Motion of American Association for Retired People for leave to file a brief as *amicus curiae* granted. Judgment vacated, and case remanded to the Court of Appeals of Arizona, Division One, for further consideration in light of *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)."

15. *Graville v. Dodge*, see note 14, supra. See also, *McGovern v. McGovern*, note 13, supra; *Jackson v. Tangreen*, note 13, supra.

16. *Akin v. Missouri Pacific Railroad Co.*, see note 6, supra; *United States v. Home Fed. S. & L. Ass'n of Tulsa*, 1966 OK 135, ¶ 18, 418 P.2d 319.

family members as a grandchild blooming under grandparental love and approval or as a grandparent intent on creating the same kind of memories in a child's offspring. For these reasons, the temptation is to allow the heart to rule over the letter of the law. Especially, under circumstances like those presented here, where the grandfather obviously loves his grandson, has only his best interest at heart, and has done a great deal for the child and the mother both economically and as an emotional support. Nevertheless, it is the law which governs these emotionally charged cases requiring us to set aside personal feelings and experiences when reaching a decision.

¶18 The crux of this cause is the principle that government should not unduly interfere with the decisions of fit parents in the upbringing and care of their children. We have long and consistently acknowledged the cardinal rule with respect to parents and their offspring—the custody, care and nurturing of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.[17] The determination of child visitation directly impacts this fundamental right.[18]

¶19 Absent some powerful countervailing interest, a parent's desire for and right to the companionship, care, custody and management of children is a protected fundamental right.[19] Although characterized as a plurality opinion, the controlling case authority here is *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) requiring that this Court and all others give special weight to a fit parent's decision regarding grandparental visitation. A majority of the Supreme Court demonstrated the need to give parents special consideration in making visitation decisions when it granted certiorari in *Dodge* and remanded specifically for the causes consideration in light of the *Troxel* opinion.

¶20 The trial court applied *Troxel's* teachings—giving special weight to a fits parent's decision. I would affirm its order. Further, I would overrule the decision in *Scott v. Scott*, 2001 OK 9, ¶5, 19 P.3d 273 which stands in contravention to *Troxel* and its progeny.

---

17. *Matter of Baby Girl L.*, 2002 OK 9, ¶33, 51 P.3d 544; *Matter of Application of Herbst*, 1998 OK 100, ¶0, 971 P.2d 395; *McDonald v. Wrigley*, 1994 OK 25, ¶9, 870 P.2d 777; *Matter of Application of Grover*, 1984 OK 20, ¶9, 681 P.2d 81; *Matter of Adoption of Darren Todd H.*, 1980 OK 119, ¶18, 615 P.2d 287; *Matter of Leake*, 1980 OK 114, ¶8, 614 P.2d 1107; *Alford v. Thomas*, 1957 OK 218, ¶0, 316 P.2d 188 (1957); *Bishop v. Benear*, 1928 OK 553, ¶0, 270 P. 569 (1928). See also, *Matter of S.B.C.*, 2002 OK 83, ¶6, 64 P.3d 1080.

18. *Ex parte State of Alabama v. L.M.S.*, 826 So.2d 178 (Ala.App.2002).

19. *Lassiter v. Department of Social Serv.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Joshua S.*, 260 Conn. 182, 796 A.2d 1141, 1155 (2002).