COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


MARK MERRITT, SR. AND
 JAYNE MERRITT
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2003-03-4                      JUDGE WALTER S. FELTON, JR.
                                                           SEPTEMBER 7, 2004
SANDRA-JOY GRAY


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Dennis J. Smith, Judge

          William B. Reichhardt (Colleen C. Sweeney; William B.
          Reichhardt & Associates, on briefs), for appellant.

          Sandra L. Havrilak (Thomas P. Sotelo; The Havrilak Law Firm,
          P.C., on brief), for appellee.


        Mark Merritt, Sr. and Jayne Merritt (parents) appeal the judgment of the trial court

denying their petition to modify a 1995 consent order governing visitation between their son

(child) and Sandra-Joy Gray, his maternal grandmother (grandmother).  On appeal, the parents

contend that the trial court erred in finding that there had been no material change in

circumstances sufficient to warrant modification of the existing consent order; in failing to

require grandmother to make a showing that actual harm would occur to the child without

visitation with her; and that its denial of the petition for modification infringed on their

constitutionally protected liberty interests as fit parents to determine the best interests of their

child regarding his visitation with grandmother.  For the following reasons, we affirm the

judgment of the trial court.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we review the evidence in the light most favorable to grandmother, the prevailing party below, granting to her all reasonable inferences fairly deducible therefrom. See Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995). The parents are the biological father and adoptive mother of the child, born in September 1991. The child's biological mother died in December 1992 after a prolonged illness. Father remarried, and his new wife adopted the child in April 1994. Three additional children were born to father and the child's adoptive mother.

Grandmother was present at the child's birth and spent significant time with him in the first year of his life. Following the death of the child's biological mother, father did not allow grandmother to visit with the child for some eleven months. From November 1993 through August 1994, father allowed grandmother to visit with the child on only two occasions, both of which were structured and monitored. In August 1994, grandmother filed a petition seeking visitation with her grandson. In January 1995, around the time father relocated with his family to Nashville, Tennessee, the parties entered into an Agreed Order in the juvenile and domestic relations district court incorporating their agreement that visitation of the child with grandmother was in the child's best interests. The court order fixed specific dates of visitation on two designated weekends. It also provided for a period of continuous visitation for two designated weeks. Additionally, grandmother was granted reasonable telephone visitation with the child. The consent order provided that: "Although the last definite time for visitation is January 1996, the parties shall do what is reasonable and necessary to continue a similar visitation schedule as the circumstances dictate beyond January 1996."

In March 1997 parents and child returned to Northern Virginia to reside. Grandmother continuously resided in Northern Virginia during these proceedings. From 1995 until 2001,

visitation continued between grandmother and child pursuant to the 1995 consent order without any reported difficulties. In April 2001, parents sent a letter to grandmother stating that they wanted more authority over visitation and desired to reduce the child's visits with her. After that event, the relationship of the parties went from cordial to "cool to almost hostile."

In May 2001, father filed a petition to modify the 1995 consent order in the juvenile and domestic relations district court. He asserted in his petition that material changes in circumstances had occurred since the 1995 consent order was entered which warranted its modification. The petition asserted "[a]t the time of the original order, [the child] was a toddler. [The child] is now an active 9-year-old with various school and family obligations, friends, summer camps and interests in other activities. The parties are experiencing difficulty with scheduling mutually convenient times for visitation." Father requested, "that he be able to determine grandparent visitation consistent with his son's best interests." He specifically requested that he be given the right to determine the visitation schedule.

On February 20, 2002, the juvenile and domestic relations district court denied father's petition, finding that the reasons given by father did not constitute a "material" change in circumstances. Noting "that both parties agree that visitation by the grandmother is in the best interests of the grandson and should continue," the court then modified the 1995 consent order to grant to grandmother twelve days of visitation per year, including "one extended period of up to seven days." It provided that "[t]he remaining time may be divided in any manner acceptable to the parties." Grandmother was again granted telephone visitation with child, and father was "directed to do what is reasonable to facilitate such visits." Father appealed the denial of his petition to modify the 1995 order to the circuit court.

In July 2002, while the appeal was pending, grandmother filed a Motion to Enforce the February 20, 2002 visitation order, asserting that father had failed to provide visitation as

provided in the order, and seeking its enforcement. When grandmother's motion to enforce was filed, parents and the child were on their summer vacation out of state. On August 9, 2002, the trial court entered a consent order establishing agreed dates for the extended visitation prior to the start of school.[1]

In September 2002, father filed a Motion for Summary Judgment urging that the holdings in Troxel v. Granville, 530 U.S. 57 (2000), and Williams v. Williams, 256 Va. 19, 501 S.E.2d 417 (1998), announced after the entry of the 1995 consent order, required the court to enter summary judgment for father, granting to him exclusive authority to determine any visitation of child with grandmother. In October 2002, the trial court denied the Motion for Summary Judgment.

In January 2003, grandmother filed a Motion to Dismiss the Appeal or in the Alternative that she be granted increased and liberal visitation, including one extended period from Friday afternoon to Sunday afternoon each month; two (2) three (3) day long winter weekends from Friday afternoon to Monday afternoon; and two consecutive weeks of uninterrupted visitation over summer. In March 2003, grandmother filed an additional Motion to Enforce, asserting that she had been allowed a total of only two days of visitation in 2003, and noting that father had offered a shortened weekend visitation to which she did not agree and that father had not been willing to set other visitation times. On March 14, 2003, the trial court entered a consent order establishing a weekend visitation period for a designated Saturday morning to Sunday afternoon. On March 14, 2003, the trial court denied grandmother's Motion to Dismiss for Improper Joinder and entered its order joining the child's adoptive mother as a necessary party.

---

[1] The entry of the consent order averted the necessity of parents and child to return to Virginia from their family vacation.

On April 15, 2003, the trial court heard evidence *ore tenus* on the parents' petition for modification. The record reflects that the parents are caring and loving parents and unquestionably fit. The child is described as a healthy, well-adjusted child, who exhibits no behavioral problems and has not required any mental health counseling. His visits with his grandmother are reported as being warm and enjoyed by the child.

On May 30, 2003,[2] the trial court ruled that the parents had failed to prove that there had been a material change in circumstances sufficient to warrant modification of the 1995 consent order. The trial court found that the parties had continuously agreed that it was in the best interests of the child to have visitation with his maternal grandmother, and that agreement was included in each of the several consent orders establishing visitation. In his petition to modify the 1995 consent order, father did not challenge that it was in the child's best interests to visit with his grandmother. On each occasion the court entered a consent order establishing specific periods for visitation during the pendency of the appeal, it had not been asked to adjudicate *if* visitation should take place, only *when* it would occur. The trial court noted that there had been no interference by the court with the parents' constitutionally protected liberty interest to determine whether visitation was in the child's best interest, as they had agreed that it was. It found that because the child's parents agreed that visitation was in the child's best interests and it found that there had been no material change in circumstances sufficient to modify the 1995 consent order, there was no requirement for it to determine whether actual harm would result to the child if continued visitation with his grandmother did not occur. See, e.g., Troxel, 530 U.S. at 65; Williams, 256 Va. at 21-22, 501 S.E.2d at 418.

The trial court noted that in the 1995 consent order father "waived" the right to raise the child "without restriction," albeit in a limited way and only as to the agreement to permit the

---

[2] The court's written order incorporating its decision was entered on July 11, 2003.

child to visit with his grandmother.  It noted that the "waiver" could not be deemed to be permanent, but could be reviewed in the appropriate circumstances.  It also concluded that the 1995 consent order was not a temporary order expiring when the last established visitation period was completed, but that it was a continuing order with visitation to be agreed by the parties, and subject to modification by the court on a showing that a material change in circumstances had occurred.  See Code § 20-124.2(E).  It declined to establish a future schedule of visitation, having concluded that there had been no material change of circumstances sufficient to warrant modification of the 1995 consent order, leaving to the parties the responsibility to schedule visitation.

ANALYSIS

I.

The primary question before the trial court was whether the petitioners met the burden of proving that there had been a material change of circumstances sufficient to warrant modification of the 1995 consent order which established visitation of the child with his grandmother.  Prior to the court entering the Agreed Order in 1995, father agreed that it was in the child's best interest to have visitation with his maternal grandmother.  Throughout these proceedings parents have not contested that visitation of the child with his grandmother continues to be in his best interests.  The only dispute between the parties has been *when* the visitation should occur, not *if* it should occur.

The record reflects that there has been an ongoing and significant strained relationship between parents and grandmother, causing them to rely on the court to bring them together to establish visitation periods. Each party blames the other for the inability to establish agreed visitation times.  Grandmother insists that parents refuse to set times for the visitation, often

- 6 -

refuse to return her phone calls or to facilitate telephone conversations between the child and her and that without her turning to the court to establish visitation, there would be none.

The parents contend that when the parties entered into the 1995 consent order, it was premised on their working together to facilitate visitation. Parents argue that grandmother refused to agree to mediation[3] with a person selected by father to help resolve their difficulties in establishing agreed periods of visitation. They also argue that when grandmother does not agree with the periods of visitation they establish to accommodate the child's increased activities and his involvement with his siblings and the intact family's activities, she insists on instituting legal proceedings to meet her demands for different times thereby creating added tension to an already strained relationship.

"The court, in the exercise of its sound discretion, may alter or change . . . the terms of visitation when subsequent events render such action appropriate." Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986)). The decision whether to modify an existing visitation order, after taking evidence *ore tenus*, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it. See Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986). We will reverse the judgment of the trial court only upon a showing that the court abused that discretion. Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

A party seeking to modify a visitation consent order bears the burden of proving that a material change of circumstances has occurred since the entry of the consent order and that a change in visitation would be in the best interests of the child. See Code § 20-108; see also

---

[3] See Code § 20-124.2(A), which provides in part: "mediation shall be used as an alternative to litigation where appropriate."

Fariss v. Tsapel, 3 Va. App. 439, 442, 350 S.E.2d 670, 672 (1986) (citing Keel v. Keel, 225 Va. 606, 611-12, 303 S.E.2d 917, 921 (1983)); see also Ingram v.Knippers, 72 P.3d 17 (Okla. 2003) (holding mother bore burden to show that a change in circumstances adversely affected the best interest of the child and that welfare of the child would have been improved by modification of the initial order). "Whether a change in circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (citation omitted).

To show that a material change in circumstances had occurred, parents asserted that the child, age four when the 1995 consent order was entered, was now twelve years old. They assert that when the consent order was entered, the child was in Tennessee and grandmother was in Northern Virginia and that the visitation was structured in blocks of time to accommodate that distance. Parents testified that after the family had returned to Northern Virginia, grandmother increased her demands for visitation. They assert that the child was involved in a growing list of activities, thereby limiting the time he was able to spend with his maternal grandmother and that he now has three siblings and four other grandparents who occupy increasing amounts of his time as part of his intact family.

The trial court found that the time the child spent visiting with grandmother was not of a degree to conflict with his increased activities. It noted that grandmother accommodated the child's increased activities when those scheduled activities occurred when the child visited her, noting specifically that she took the child to his scheduled football practices, and accommodated his scouting trips when they occurred during her visitation periods. The trial court also found that the family's return to Northern Virginia where grandmother resided did not make visitation more difficult. While it concluded from the evidence that circumstances had changed since the entry of the Agreed Order in 1995, it found that those changes were not "material changes in

circumstances, which would warrant modification of the existing Court order." We conclude that the trial court did not err in finding that the changes in circumstances were not sufficient to warrant modification of the 1995 Agreed Order governing visitation and that there is credible evidence in the record to support its decision.

## II.

The parents also argue that the trial court erred in not applying an "actual harm" analysis required by Williams, 256 Va. 19, 501 S.E.2d 417, in determining whether continued visitation with grandmother by child was in his best interest. In Williams, the Supreme Court held that a court may not interfere in the parent-child relationship by ordering visitation with a non-parent over the parent's objection, absent a showing of "actual harm to the child's health or welfare without such visitation." Id. at 22, 501 S.E.2d at 418 (involving court-ordered visitation for the grandparents pursuant to Code § 20-124.2 over both parents' objections) (citation omitted). The trial court found that parents and grandmother had entered into an agreement, made part of the 1995 Agreed Order,[4] resolving the matter of visitation with his grandmother to be in the child's "best interest." There is no assertion by parents in this proceeding that continued visitation is not in the child's best interest. The record reflects that the child is well-adjusted, bright, and has a loving and close relationship with his grandmother.

Because the trial court found that no material changes in circumstances had occurred to warrant modifying the consent order, including that continuing visitation was in the best interests of the child, it was not necessary for it to apply the "actual harm" test in determining whether to modify the 1995 Agreed Order.

---

[4] "A consent decree is a contract or agreement between the parties to the suit, entered of record in the cause with the consent of the court, and is binding unless secured by fraud or mistake." Orlandi v. Orlandi, 23 Va. App. 21, 26, 473 S.E.2d 716, 719 (1996).

III.

The parents also argue that the trial court erred in ruling that they had permanently "waived their constitutional rights" as a result of entering into the 1995 consent order. Parents have a fundamental liberty interest to determine how to raise their children, and we presume that fit parents act in their children's best interest. Troxel, 530 U.S. at 65; Williams, 256 Va. at 21-22, 501 S.E.2d at 418. And a court may not interfere in the parent-child relationship by ordering visitation with a non-parent over the parent's objection absent a showing of "actual harm to the child's health or welfare without such visitation." Williams, 256 Va. at 22, 501 S.E.2d at 418 (citation omitted). Here, the parents, unquestionably fit parents, entered into the Agreed Order in March of 1995 that not only permitted visitation but also announced their agreement that such visitation was in the best interests of their child. Troxel and Williams each concerned parental objections to awarding initial visitation to a grandparent or non-parent. Here, the parents never voiced opposition to visitation occurring.

We find no indication in the record that the trial court ruled that parents' consent to the entry of the 1995 Agreed Order, granting to grandmother limited visitation with the child, divested them permanently of their constitutionally protected interests in the care and control of their child. The trial court noted in its decision that, "upon an appropriate showing of circumstances the presumption would be reinstated and, therefore, it would be in the parents' right to make the unilateral and automatize [sic] decision with respect to the care, custody, and control of the child." See Wilson v. McGlinchey, 811 N.E.2d 526 (N.Y. May 13, 2004) (terminating visitation of child with grandparents, initially permitted pursuant to consent order between grandparents and parents, as not being in best interests of child where there was increasing tension and hostility between the parties over visitation resulting from parents' refusal to agree to visitation and grandparents employing threats of further court action to "bully"

- 10 -

parents into acceding to grandparents' demand for visitation); see also Ingram, 72 P.3d at 22; In re custody of C.M., 74 P.3d 342 (Colo. Ct. App. 2002).

The parents also assert that the 1995 consent order and the subsequent consent orders denied them the right to determine the visitation schedule for their child. In Troxel, the United States Supreme Court noted:

> [I]n an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren. Needless to say, however, our world is far from perfect, and in it the decision whether such an intergenerational relationship would be beneficial in any specific case is for the parent to make in the first instance. *And, if a fit parent's decision [governing visitation] becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.*

520 U.S. at 70 (emphasis added).

There is no showing in the record before us that the trial court failed to "accord at least some special weight" to the parents' determination of visitation periods when those decisions were presented to it. As we noted above, parents voluntarily "waived" their parental rights to a limited degree by asking the court to assist in the establishment of times of visitation when the parties were unable to agree. As the trial court noted in announcing its decision from the bench, the parents could not reduce the consent order to "a sham" by *de facto* refusing to agree to any times for visitation.

Both the 1995 and the February 2002 orders provided flexibility to the parents in scheduling visitation between the child and grandmother. The 1995 order required the parties "to do that which is reasonable and necessary to continue a similar visitation schedule as the circumstances dictate." The February 2002 order did not provide specific dates or times when the visitation was to occur. The consent order provided only for the number of days to be set aside for visitation, twelve days out of a possible 365 days, and of those twelve days there was to be one extended continuous visit for a period of seven days. The remaining time was to be

- 11 -

allocated "in any manner acceptable to the parties." Nothing in the language of the visitation orders prevented the parents from determining the schedule for visitation consistent with the child's best interest. Moreover, the record does not reveal that grandmother unreasonably impeded the parents' efforts to schedule visitation or that the busy schedule of the active young child was in any way impaired by the visits. In fact, grandmother accommodated the child's increased activity schedule when he was visiting with her.

## CONCLUSION

We conclude from the record before us, that the trial court did not err in finding that the parents failed to demonstrate a material change in circumstances sufficient to warrant modification of the 1995 consent order; that the court was not required to apply an "actual harm" analysis where the parents did not contest that it was in the child's best interests to visit with his grandmother; and that the trial court did not err in concluding that the parents waived their constitutional rights to a limited degree when they entered into a consent order agreeing that their child's visitation with his grandmother was in his best interests. Accordingly, we affirm the judgment of the trial court.

Affirmed.