5 P.2d 925

**Kathryn LUCILLE and Donald Graville, Petitioners–Appellees,**

v.

**Douglas Paul DODGE, Respondent–Appellant.**

**No. 1 CA–CV 99–0582.**

Court of Appeals of Arizona, Division 1, Department E.

May 23, 2000.

---

8. Cotton cites his efforts to summon help for L.W. immediately after the shooting as an example of such an effort.

594

Stanley David Murray, P.C. By Stanley David Murray, Phoenix, Attorneys for Petitioners–Appellees.

Roberts & Rowley, Ltd. By Paul S. Rowley, Mesa, Attorneys for Respondent–Appellant.

## OPINION

TIMMER, Judge.

¶ 1 Respondent-appellant Douglas Paul Dodge ("Dodge") appeals from the trial court's Contempt of Visitation Order, which found that he had violated an order providing for visitation between petitioners-appellees Kathryn Lucille and Donald Graville (the "Gravilles") and their two granddaughters, Dodge's minor children. For the reasons discussed below, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

¶ 2 This appeal arises out of the Gravilles' attempt to obtain visitation with their two granddaughters under Arizona's Grandparents' Visitation Rights statute, Arizona Revised Statutes Annotated ("A.R.S.") section 25–409 (Supp.1999).

¶ 3 In January 1998, the Honorable James H. Keppel entered an order (the "Keppel Order") awarding the Gravilles visitation rights with their granddaughters. This order required Dodge to allow the Gravilles visits with the children at least twice a month for four to eight hours at a time, and instructed both Dodge and the Gravilles to

---

1. Discussions of the early factual and procedural history of this case appear in both *Graville v. Dodge,* 195 Ariz. 119, 985 P.2d 604 (1999), *review denied, Graville v. Dodge,* No. CV–99–00910PR (June 16, 1999) (*"Dodge I"*), and *Graville v. Dodge,* 1 CA–SA 99–0235 (App. Nov. 26, 1999) (unpublished Memorandum Decision) (*"Dodge II"*). We include here only the facts that are essential to our determination of this appeal.

notify each other at least three days in advance of any change in address or telephone number. Dodge appealed the order, and this court affirmed the visitation and notification terms, but struck other provisions of the order. *Graville v. Dodge,* 195 Ariz. 119, 128, ¶¶ 39–42, 985 P.2d 604, 613 (1999), *review denied, Graville v. Dodge,* No. CV–99–00910PR (June 16, 1999) (*"Dodge I"*).

¶ 4 While the appeal in *Dodge I* was pending, the Gravilles petitioned the trial court for an order finding Dodge in contempt of the Keppel Order. After a hearing, the Honorable Cheryl K. Hendrix found Dodge in contempt and entered an order to that effect (the "Hendrix Order").

¶ 5 Dodge challenged the Hendrix Order via both a special action and this direct appeal. In the special action, we accepted jurisdiction in part, and declined to grant the relief sought by Dodge therein. This appeal involves the provisions of the Hendrix Order appointing Robert A. Block, Ph.D., to supervise compliance with the visitation orders and provide therapeutic intervention. We have jurisdiction to consider this appeal pursuant to A.R.S. section 12–2101(C) (1994).

### Standard of Review

¶ 6 The trial court has broad discretion in issuing visitation orders, and we will not disturb such an order absent an abuse of that discretion.[2] *Armer v. Armer,* 105 Ariz. 284, 289, 463 P.2d 818, 823 (1970). Further, we will not set aside findings of fact unless clearly erroneous, and we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *See* Ariz. R. Civ. P. 52(a); *In re Marriage of Berger,* 140 Ariz. 156, 161, 680 P.2d 1217, 1222 (1983).

### Discussion

¶ 7 Dodge challenges the Hendrix Order on numerous grounds. We address each in turn.

### A. The Hendrix Order is not Vague and Ambiguous, and does not Place Dr. Block in an Ethical Dilemma.

¶ 8 Dodge asserts that Dr. Block's duties under the order are vague and ambiguous and, therefore, the order is unenforceable. The Hendrix Order provides, in pertinent part:

> Pursuant to A.R.S. § 25–410(B), Dr. Robert A. Block, Ph.D. is appointed to exercise continuing supervision over this case to assure that the visitation orders are complied with and to provide therapeutic [intervention] so that a relationship between the children and grandparents can become a possibility if not a reality. By this appointment the terms of the Maricopa County Superior Court Guidelines regarding Family Court Advisors are incorporated.

We do not find this order indecipherable. The terms of visitation are clearly set forth in the Keppel Order and should be easily understood by Dr. Block so as to allow him to supervise compliance with the order. Moreover, it is evident from the court's findings that "therapeutic intervention" refers to employment of Dr. Block's skills to re-establish, if possible, the relationship between the Gravilles and their grandchildren.[3] Finally, although the Maricopa County Superior Court Guidelines regarding Family Court

---

**2.** In his reply brief, Dodge discusses a pending United States Supreme Court case (*Troxel v. Granville,* No. 99–138, 2000 WL 712807) disputing the constitutionality of Washington's grandparents' visitation statute. Dodge relies on the tenor of certain justices' questions during the oral argument in *Troxel* to urge us to apply a strict scrutiny analysis to the issues raised in this appeal. However, this appeal does not address the constitutionality of Arizona's Grandparents' Visitation Rights statute, A.R.S. § 25–409. We addressed that issue in *Dodge I,* where we chose to apply a rational basis standard of review, not a strict scrutiny one, in determining that the statute is constitutional. *See Dodge I,* 195 Ariz. at

125–26, ¶¶ 24 and 27, 985 P.2d at 610–11. Here, our review is limited to determining whether the trial court abused its discretion by modifying the visitation order through the appointment of a supervising psychologist.

**3.** The trial court found that the Gravilles' "attempts to have and maintain a relationship with their grandchildren have been successfully thwarted by [Dodge]. He has been, at best, uncooperative in arranging for visitation. His attitude indicates he has been unreasonably vindictive and spiteful in effectively denying visitation."

Advisors were not included in the record on appeal, we presume from their label that they provide additional guidance to Dr. Block.

¶ 9 Dodge further asserts that Dr. Block's court-ordered duties present an ethical dilemma for him because they (i) require him to enforce the court's visitation order, even though it might vary from his professional judgment regarding the case; and (ii) force him to encourage the children's visits with the Gravilles over Dodge's objections and in violation of a psychologist's obligation to respect a parent's judgment regarding the treatment of a child. We do not interpret the Hendrix Order as requiring Dr. Block to "enforce" the visitation order, or to violate his ethical obligations. However, if the order places Dr. Block in a position where he may be forced to disregard any ethical or professional obligations, Dr. Block may raise these issues with the trial court. Thereafter, the trial court can terminate Dr. Block's appointment,[4] and modify the visitation order, as appropriate. The possibility that Dr. Block may experience an ethical dilemma at a future date does not serve to invalidate the Hendrix Order.

### B. The Trial Court had Statutory Authority to Appoint Dr. Block.

#### 1. Authority under A.R.S. section 25–410(B).

¶ 10 The trial court relied on A.R.S. section 25–410(B) (Supp.1999) to appoint Dr. Block to supervise the parties' visitation. This provision states, in pertinent part:

> B. If either parent requests the order, or if all contestants agree to the order, or if the court finds that in the absence of the order the child's physical health would be endangered or his emotional development significantly impaired, and if the court finds that the best interests of the child would be served, the court shall order a local social service agency to exercise continuing supervision over the case to assure that the custodial or visitation terms of the decree are carried out.

A.R.S. § 25–410(B).

¶ 11 Dodge asserts that section 25–410(B) does not apply to this case because it addresses disputes between parents, not cases involving grandparents' visitation. Dodge argues that by invoking this statute to appoint Dr. Block, the trial court impermissibly gave statutory protections to the Gravilles that the legislature intended only to extend to parents. We disagree.

¶ 12 Section 25–410(B) does not state that supervised visitation may only be ordered in cases in which parents are opposing parties. Although this provision states that "either parent" may request such an order, it also provides that supervised visitation may be ordered if "all contestants" agree to the order, or if the trial court deems it necessary under specified conditions. Dodge argues that the lack of reference to grandparents in A.R.S. section 25–410(B) evidences the legislature's intent that supervised visitation cannot be ordered in cases in which grandparents are granted visitation under A.R.S. section 25–409. The Gravilles counter that the term "contestants," as used in section 25–410(B), includes grandparents, and supervised visitation can be ordered anytime a child's physical or emotional health is endangered or impaired.

¶ 13 To determine legislative intent, we first review a statute's language. *See Calmat of Arizona v. State ex rel. Miller*, 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). Because A.R.S. section 25–410(B) does not expressly address grandparent visitation, we must look beyond the statutory language and consider the statute's effects and consequences, as well as its spirit and purpose. *See id.* We must also interpret section 25–410(B) in light of A.R.S. section 25–409 (Supp.1999). *See Goulder v. Arizona Dep't of Transp., Motor Vehicle Div.*, 177 Ariz. 414, 416, 868 P.2d 997, 999 (1993) ("Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony."). The goal

---

**4.** The Hendrix Order provides that Dr. Block's appointment may be terminated on motion by the court or the parties, or by Dr. Block's request.

is to achieve consistency between the statutes. *See id.* at 416, 868 P.2d at 999.

¶ 14 The legislature has expressed its intention that grandparents be granted visitation rights under specified circumstances. *See* A.R.S. § 25–409. The clear intent of granting such rights was to serve the best interests of the child. *See id.* ("The superior court may grant the grandparents of the child reasonable visitation rights to the child during his minority *on a finding that the visitation rights would be in the best interests of the child.*") (emphasis added). In light of the grant of visitation rights to grandparents, it would be absurd to believe that the legislature intended to leave the trial court without the ability to implement the visitation order, if necessary, through supervised visitation. *See State v. Medrano–Barraza*, 190 Ariz. 472, 474, 949 P.2d 561, 563 (1997) ("We presume the framers of the statute did not intend an absurd result and our construction must avoid such a consequence."); *see also* A.R.S. § 1–211(B) ("Statutes shall be liberally construed to effect their objects and to promote justice."). Phrased another way, having recognized that the best interests of a child may compel granting visitation rights to grandparents, the legislature surely did not intend to disregard those interests by failing to allow supervised visitation when the physical or emotional health of the child is at risk. *See Forino v. Arizona Dep't of Transp.*, 191 Ariz. 77, 80, 952 P.2d 315, 318 (1997) ("To discern the legislature's intent, we may consider the effect and consequences of alternative construction."); *see also Phoenix v. Superior Court*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (cardinal rule of statutory interpretation is to ascertain legislative intent, and court should interpret statute so as to give it a fair and sensible meaning). Additionally, and after our review of the legislative history of A.R.S. sections 25–409 and 25–410(B), we discern no reason why the legislature would allow the trial courts discretion to order supervision for parent visitation, but deny such relief for grandparent visitation.[5] For these reasons, we hold that the legislature intended to allow the trial court to order supervised visitation under section 25–410(B) in grandparent visitation cases.

¶ 15 Dodge next claims that even if section 25–410(B) applies to grandparent visitation, Judge Hendrix failed to comply with the statute because appointment of a therapist was not (i) sought by either parent; (ii) agreed upon by all the contestants; or (iii) found by the trial court as necessary for the children's physical or emotional health. *See* A.R.S. § 25–410(B). We reject Dodge's argument because the trial court ruled that Dr. Block's assistance was needed to ensure compliance with the visitation orders, given Dodge's history of obstructionism and contempt for the court's orders. This ruling constitutes a finding that the order was necessary for the children's emotional health. Therefore, the trial court made the threshold finding mandated by section 25–410(B).

¶ 16 Dodge additionally contends that Judge Hendrix could not order supervised visitation because her involvement in the case was limited to the contempt proceedings. During these proceedings, however, Judge Hendrix examined the Keppel Order, reviewed expert evidence indicating that visitation with the Gravilles is in the children's best interests, heard testimony and considered other evidence revealing Dodge's continual defiance of the Keppel Order.[6] We find that Judge Hendrix had before her the information needed for her determination that Dr. Block's assistance in enforcing the

---

5. The weakness of Dodge's interpretation of A.R.S. § 25–410(B) is further revealed by his contention that *parents* can seek supervised visitation in grandparent visitation cases, but *grandparents* are prevented from seeking such assistance from the court. The best interests of the child are not well-served by an interpretation of § 25–410 that conditions assistance for visitation upon the identity of the party making the request for help.

6. Dodge argues that Judge Hendrix was required to interview his children before entering her order. We disagree. *See* A.R.S. § 25–405(A)(Supp.1999) ("The court *may* interview the child in chambers to ascertain the child's wishes ... as to visitation.") (emphasis added).

visitation order was in the children's best interests.[7]

### 2. Authority under A.R.S. section 25–414(A).

¶ 17 Even if A.R.S. section 25–410(B) did not apply to support the Hendrix Order, the trial court had authority to appoint a counselor to supervise the parties' visitation pursuant to A.R.S. section 25–414(A) (Supp.1999), the statute governing violation of visitation rights. Subsection (A)(4) of that statute specifically authorizes the court to order family counseling, while subsection (A)(7) allows the court to "[m]ake any other order that may promote the best interests of the child or children involved." A.R.S. § 25–414(A). Dodge asserts that we cannot rely on A.R.S. section 25–414(A) because Judge Hendrix cited A.R.S. section 25–410(B) as the basis for her appointment of Dr. Block. However, we can affirm the trial court's ruling if it was correct for any reason. *See Hale v. Amphitheater School Dist. No. 10,* 192 Ariz. 111, 114, ¶ 5, 961 P.2d 1059, 1062 (1998).

¶ 18 Dodge next claims that A.R.S. section 25–414 applies only to disputes between parents and is inapplicable to grandparent visitation. We reject this argument for the same reasons we reject Dodge's argument regarding the scope of A.R.S. section 25–410(B).

¶ 19 Dodge further contends that Dr. Block's appointment is not equivalent to the "family counseling" allowed under A.R.S. section 25–414(A)(4). Dodge's main complaint appears to be that Dr. Block's appointment to supervise the parties "indefinitely" goes "far beyond" the appointment of a family counselor. The court did not appoint Dr. Block for an indefinite (or infinite) time period. Rather, the order sets a presumptive two-year term for Dr. Block's appointment, which may be reduced or extended per further court order.

¶ 20 Dodge also complains that the "catch-all" provision in A.R.S. section 25–414(A)(7) should not apply to grandparents' visitation cases because it would authorize a vast array of orders, some of which will "undoubtedly" substantially interfere with parents' rights to decide issues regarding their children's welfare and upbringing. As discussed *infra,* Dodge has not demonstrated that the Hendrix Order substantially interferes with his parenting rights. To the extent that orders in other cases might do so, courts will have to address those issues on a case-by-case basis.

### C. The Hendrix Order is not an Unconstitutional Application of the Grandparents' Visitation Statute.

¶ 21 Dodge argues that appointment of Dr. Block to supervise and provide "therapeutic intervention" in the visits between the Gravilles and their grandchildren infringes upon his constitutional rights to custody and control of his children, as well as his children's constitutional rights to be free of "thought reform." As a result, he argues that the Hendrix Order represents an unconstitutional application of the Grandparents' Visitation Rights statute.

¶ 22 In *Dodge I,* this court concluded that the visitation provisions of the Keppel Order did not constitute a substantial or unconstitutional interference with Dodge's parental rights. 195 Ariz. at 128, ¶ 39, 985 P.2d at 613. The Hendrix Order does not enlarge or significantly alter the visitation provisions we have already approved in the prior appeal. Rather, it merely provides a means by which the visitation may be more effectively carried out given the parties' history of discord. This order does not impermissibly infringe upon Dodge's parental rights.

¶ 23 Moreover, the order does not subject the children to any type of "thought control." It simply appoints a therapist to supervise and facilitate the visits to ensure the least amount of disturbance to the children.

---

7. Dodge makes a passing reference to the fact that A.R.S. § 25–410(B) authorizes the court to order a "local social service agency" to supervise visitation. To the extent Dodge attempts to argue that Dr. Block does not fall within this definition and, therefore, the court lacked authority to appoint him, he failed to develop this argument on appeal. Therefore, we do not address it. *See* Ariz. R. Civ.App. P. ("ARCAP") 13(a)(6); *Adams v. Valley National Bank,* 139 Ariz. 340, 343, 678 P.2d 525, 528 (1984) (court will not address issue party failed to develop on appeal).

**D. The Hendrix Order does not Impermissibly Expand on the Keppel Order, nor does it Delegate the Court's Discretion to Dr. Block.**

¶ 24 Dodge contends that the Hendrix Order impermissibly expands on the Keppel Order by providing for unsupervised visitation after Dr. Block determines that supervised visitation is no longer necessary. Contrary to Dodge's assertion, however, the Hendrix Order did not contradict the Keppel Order. The latter order never barred unsupervised visitation. Rather, the only limitation regarding the mechanics of the visitation concerned the location of the visits. The Keppel Order provided that the first two months of visits should occur in a public place "to accommodate [Dodge's] concerns of sanitary conditions and secondary smoke; and to accommodate the children's possible discomfort of being in the same home where their Mother died." After this two-month adjustment period, the visits could be held at any location. Moreover, other provisions of the Keppel Order, such as the provision allowing the Gravilles a three-day weekend with the children during their summer vacation, indicate that unsupervised visitation was contemplated by Judge Keppel.

¶ 25 Relying upon *DePasquale v. Superior Court*, 181 Ariz. 333, 890 P.2d 628 (1995), Dodge next argues that the Hendrix Order inappropriately vests authority in an expert to make decisions that should be reserved to the trial court. *DePasquale* is distinguishable from the case at issue, and we therefore reject Dodge's argument.

¶ 26 In *DePasquale*, this court held that the trial court erred by declaring that it would order whatever interim child custody a psychologist might recommend. 181 Ariz. at 335–336, 890 P.2d at 630–631. The *DePasquale* court concluded that while a court may consider expert opinion in making custody decisions, it "can neither delegate a judicial decision to an expert witness nor abdicate its responsibility to exercise independent judgment." *Id.* at 336, 890 P.2d at 631. Here, the trial court did not relinquish to Dr. Block its authority to determine visitation issues or the best interests of the children, thereby complying with *DePasquale*. In the first part of this case, Judge Keppel examined the evidence, including the family assessment evaluation of Dr. Marlene Joy, and determined that visitation with the Gravilles was in the best interests of the children. Judge Keppel also established guidelines regarding the appropriate amount and timing of visitation. In the contempt proceedings, Judge Hendrix concluded that outside assistance was needed to effectuate that visitation. She did not improperly delegate the visitation decision, or consideration of the children's best interests, to Dr. Block. Thus, based on our narrow interpretation of the Hendrix Order, the trial court did not violate *DePasquale* as it neither delegated a judicial decision to Dr. Block, nor abdicated its responsibility to exercise independent judgment. *See DePasquale*, 181 Ariz. at 336, 890 P.2d at 631.

**E. Attorneys' Fees.**

¶ 27 The Gravilles request an award of attorneys' fees and costs on appeal pursuant to A.R.S. sections 25–324 (Supp.1999) and 25–414(C). We decline to award fees pursuant to the latter provision as it concerns violation of a visitation order. Although this appeal stems from a contempt proceeding, the subject of the appeal is the modification of the terms of visitation. Therefore, section 25–414(c) does not authorize us to award attorneys' fees to the Gravilles.

¶ 28 However, A.R.S. section 25–324 authorizes us to order one party to pay the fees and expenses incurred by the other party in a domestic relations case after considering the parties' relative financial resources. *See In re Marriage of Zale*, 193 Ariz. 246, 251, 972 P.2d 230, 235 (1999). One purpose of the statute is to provide a remedy for the party least able to pay. *See id.* (citing *Gore v. Gore*, 169 Ariz. 593, 594, 821 P.2d 254, 255 (1991)). The Gravilles may submit a statement of fees and costs, along with a verified statement of their financial resources. *See* ARCAP 21(c)(2) (statement of amount claimed shall set forth any other factors "relevant to the determination of a reasonable fee"). We will determine whether to award attorneys' fees, and in what amount, upon our review of the Gravilles'

statement and any objection filed by Dodge pursuant to Rule 21(a), Arizona Rules of Civil Appellate Procedure. Any objection filed by Dodge shall contain a verified statement of Dodge's financial resources.

## CONCLUSION

¶ 29 For the above-stated reasons, we affirm the Hendrix Order.

CONCURRING: PHILIP E. TOCI, Presiding Judge, and RUDOLPH J. GERBER, Judge.