170 P.3d 288

In re the Matter of Kiley S. SHEEHAN, Petitioner/Appellee,

v.

Lou Ann FLOWER, Intervenor/Appellant.

No. 1 CA–CV 06–0781.

Court of Appeals of Arizona, Division 1, Department E.

Nov. 13, 2007.

Review Denied March 18, 2008.

Dodge Anderson Mableson Steiner Jones & Horowitz, Ltd. By Jess A. Lorona, Kesha A. Hodge, Phoenix, Attorneys for Petitioner/Appellee.

Cantor & Simon, PLLC By Stanley D. Murray, Tempe, Attorney for Intervenor/Appellant.

## OPINION

NORRIS, Judge.

¶1 Under Arizona Revised Statutes ("A.R.S.") section 25–408 (2007), a non-custodial parent who is awarded parenting time is granted certain procedural rights to object to a custodial parent's out-of-state relocation. The issue presented in this appeal is whether a grandparent who has been awarded visitation is entitled to these same procedural rights. We hold A.R.S. § 25–408 is inapplicable to grandparent visitation and affirm the superior court's decision rejecting a grandparent's efforts to enforce her visitation rights under this statute.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶2 Pursuant to a Decree of Dissolution of Marriage with Children, appellee Kiley S.

Sheehan ("Mother") was awarded sole legal custody and primary physical custody of her minor child. The decree awarded the child's father, Shawn M. Sheehan ("Father"),[1] four hours of parenting time every other week, to be supervised by his mother, appellant Lou Ann Flower ("Grandmother").

¶ 3 In April 2004, Grandmother filed a petition seeking visitation separate from Father's parenting time. After holding an evidentiary hearing, the superior court concluded it was in the child's best interest for Grandmother to have visitation. The court awarded Grandmother four hours of visitation following Father's supervised parenting time and allowed Grandmother to "have access" to the child during the time that Father had "access."[2]

¶ 4 In December 2005, Mother notified Grandmother she would be traveling to Indiana with the child to care for an ailing relative. Grandmother responded with a motion asking the court to prohibit Mother from leaving the state. In her motion, Grandmother argued "[Mother's] only purpose for leaving Arizona is to relocate and prevent [Grandmother] from seeing her … granddaughter." Accordingly, she requested the superior court to prohibit Mother from leaving Arizona "until the mandate of A.R.S. § 25–408 regarding relocation has been met by [Mother]."

¶ 5 The superior court held a telephonic conference on Grandmother's motion in February 2006. By then, Mother had permanently moved to Indiana and, therefore, the court denied the motion as moot. However, the court directed counsel for the parties to file briefs explaining "how A.R.S. § 25–408 would apply to grandparent visitation superceding parent relocation, along with any supporting case law thereto."

1. Father is not a party to this appeal.

2. Mother appealed from the trial court's order granting Grandmother visitation. We affirmed the visitation order in a March 31, 2005 memorandum decision.

3. The superior court's order is a "special order made after final judgment" within the meaning of A.R.S. § 12–2101(C). *See Cone v. Righetti*, 73 Ariz. 271, 275, 240 P.2d 541, 543 (1952) (order

¶ 6 After additional argument regarding application of A.R.S. § 25–408 to the situation, the superior court concluded "A.R.S. § 25–408 does not apply to grandparent visitation rights" and directed the parties to participate in a conference for the purpose of developing a long-distance visitation plan. The court also set the matter for trial in the event the parties failed to reach an agreement regarding a visitation plan.

¶ 7 The parties were unable to reach such an agreement; trial went forward as scheduled. After considering the testimony of the parties and additional argument, the court reaffirmed its prior ruling that A.R.S. § 25–408 was inapplicable to grandparent visitation and established a schedule for Grandmother's visitation.

¶ 8 Grandmother appealed the superior court's order. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1) (2003) and 12–2101(C) (2003).[3]

## DISCUSSION

### A. Standard of Review

¶ 9 On appeal, Grandmother argues the superior court misinterpreted A.R.S. § 25–408 and asserts she was entitled to the procedural rights and protections afforded by that statute. Thus, she presents a legal issue that requires us to engage in statutory interpretation. We review de novo the superior court's interpretation and application of A.R.S. § 25–408. *Thomas v. Thomas*, 203 Ariz. 34, 36, ¶ 7, 49 P.3d 306, 308 (App.2002).

### B. Plain Language of A.R.S. § 25–408

■ ¶ 10 When we are faced with an issue of statutory interpretation, we must first look to the language of the statute. *E.g., Hughes Aircraft Co. v. Jacobson*, 525

modifying custody, visitation, and support was appealable as a "special order" made after final judgment); *In re Marriage of Dorman*, 198 Ariz. 298, 300–01, ¶¶ 3–4, 9 P.3d 329, 331–32 (App. 2000) (order changing custody of minor child and establishing visitation rights was an appealable special order when it was not "merely preparatory" and "resolve[d] all the issues raised in the petition").

U.S. 432, 438, 119 S.Ct. 755, 760, 142 L.Ed.2d 881 (1999); *Mail Boxes v. Indus. Comm'n of Ariz.*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). With limited exceptions, if the language of the statute is clear and unambiguous, we apply it without using other means of statutory construction. *E.g., Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *Janson ex rel. Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). In this case, based on the plain language of A.R.S. § 25–408, we conclude that the meaning of the statute is unambiguous and does not apply to grandparent visitation.[4]

¶ 11 The statute provides, in relevant part,

B. If by written agreement or court order both *parents* are entitled to custody or *parenting time* and both *parents* reside in the state, at least sixty days' advance written notice shall be provided to the other *parent* before a parent may do either of the following:

    1. Relocate the child outside the state.

    2. Relocate the child more than one hundred miles within the state.

C. .... A parent who does not comply with the notification requirements of this subsection is subject to court sanction....

D. Within thirty days after notice is made the nonmoving *parent* may petition the court to prevent relocation of the child....

....

G. The court shall determine whether to allow the parent to relocate the child in accordance with the child's best interests. The burden of proving what is in the child's best interests is on the parent who is seeking to relocate the child. To the extent practicable the court shall also make appropriate arrangements to ensure the continuation of a meaningful relationship between the child and both *parents.* A.R.S. § 25–408 (emphasis added).

¶ 12 As reflected by the foregoing emphasized language, on its face, the statute requires that advance notice and related rights be afforded only to a "parent" whose custody or "parenting time" will be impacted by a custodial parent's relocation. The statute does not, however, define or describe what the word parent means. In such a situation, we construe words left undefined by the legislature according to their "common and approved us[age]."[5] A.R.S. § 1–213 (2002); *see also Circle K. Stores, Inc. v. Apache County,* 199 Ariz. 402, 408, ¶ 18, 18 P.3d 713, 719 (App.2001) ("By declining to define a statutory term, the legislature generally intends to give the ordinary meaning to the word." (citing *Kessen v. Stewart,* 195 Ariz. 488, 491, ¶ 6, 990 P.2d 689, 692 (App.1999))).

¶ 13 We have consistently defined "parent" to mean "one who begets offspring" or have used the term to refer to a child's biological or adoptive mother and father. *See, e.g., Finck v. Superior Court,* 177 Ariz. 417, 421, 868 P.2d 1000, 1004 (App.1993) ("A 'parent' in the domestic relations statutes is a biological or adoptive parent."), *approved in part sub nom. Finck v. O'Toole,* 179 Ariz. 404, 880 P.2d 624 (1994); *Hughes v. Creighton,* 165 Ariz. 265, 268, 798 P.2d 403, 406 (App.1990) ("A common usage of the term parent is one who begets offspring"); *Sailes v. Jones,* 17 Ariz.App. 593, 597, 499 P.2d 721, 725 (1972) ("We are in agreement with the cases which have defined 'parent' to mean 'one who begets offspring.'"). *Cf. Riepe v. Riepe,* 208 Ariz. 90, 94, ¶ 17, 91 P.3d 312, 316 (App.2004) (inclusion of grandparents and great-grandparents in the category of persons able to

---

**4.** Common law does not recognize grandparent visitation as a legal right. *Graville v. Dodge,* 195 Ariz. 119, 123, ¶ 18, 985 P.2d 604, 608 (App. 1999) ("*Dodge I*") ("Under the common law, grandparents had no legal rights to visitation with their grandchildren."); *Sands v. Sands,* 157 Ariz. 322, 323, 757 P.2d 126, 127 (App.1988) ("Prior to the enactment of grandparent visitation statutes, grandparents had no legal rights to visitation with their grandchildren."). All grandparent visitation rights are statutorily derived. *Sands,* 157 Ariz. at 323, 757 P.2d at 127.

**5.** While the term "parent" is not defined in our child custody statutes, "parenting time" is defined as "the condition under which a parent has the right to have a child physically placed with the parent and the right and responsibility to make, during that placement, routine daily decisions regarding the child's care consistent with the major decisions made by a person having legal custody." A.R.S. § 25–402(4) (2007).

obtain visitation under A.R.S. § 25–415(C)(2000) was indication the statute was applicable to non-parents); *Olvera v. Superior Court*, 168 Ariz. 556, 558, 815 P.2d 925, 927 (App.1991) ("The definition of 'parent' does not include a stepparent in domestic relations cases."). Our use of this definition mirrors the state legislature's use of the term "parent" in other settings. *See, e.g.,* A.R.S. § 8–501(A)(8) (2007) (" 'Parent' means the natural or adoptive mother or father of a child."); A.R.S. § 8–531(10) (2007) (same); A.R.S. § 14–1201(35) (2005) (" 'Parent' ... excludes any person who is only a stepparent, foster parent or grandparent."). In addition, our child custody statutes define the term "legal parent" as "a biological or adoptive parent whose parental rights have not been terminated." A.R.S. § 25–415(G)(2) (2007).[6]

¶ 14 Grandmother, nevertheless, argues we should interpret A.R.S. § 25–408 more expansively. She asserts it would be "absurd" to believe the legislature would have granted grandparents visitation rights and then would have deprived the courts of the power to implement and enforce those rights. Thus, she argues we should interpret A.R.S. § 25–408 to apply to grandparent visitation by looking at its spirit, purpose, effects, consequences, and role in the statutory scheme pertaining to court ordered visitation. Relying on *Graville v. Dodge*, 197 Ariz. 591, 5 P.3d 925 (App.2000) ("*Dodge II*"), *vacated by* 533 U.S. 945, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001), she thus argues we should interpret A.R.S. § 25–408 in light of A.R.S. § 25–409 (2007). The approach to statutory interpretation we applied in *Dodge II,* however, is not applicable here.

¶ 15 At issue in *Dodge II* was whether A.R.S. § 25–410(B) authorized a court to appoint a psychologist to supervise the parties' compliance with an order providing for grandparent visitation. *Dodge II,* 197 Ariz. at 596, ¶¶ 10–12, 5 P.3d at 930. Under the statute, a court could order supervised visitation if requested by "either parent," if "all contestants" agreed, or if the court deemed it necessary under specified conditions. A.R.S. § 25–410(B) (Supp.1999); *Dodge II,* 197 Ariz. at 596, ¶ 12, 5 P.3d at 930. Because the statute, on its face, was not limited to cases involving opposing parents, in *Dodge II* we examined the statute's effects, consequences, spirit, and purpose and also construed it in light of A.R.S. § 25–409. We concluded the court could order supervised visitation in grandparent visitation cases. We reasoned:

In light of the grant of visitation rights to grandparents, it would be absurd to believe that the legislature intended to leave the trial court without the ability to implement the visitation order, if necessary, through supervised visitation. Phrased another way, having recognized that the best interests of a child may compel granting visitation rights to grandparents, the legislature surely did not intend to disregard those interests by failing to allow supervised visitation when the physical or emotional health of the child is at risk.

*Dodge II,* 197 Ariz. at 597, ¶ 14, 5 P.3d at 931 (internal citations omitted).

¶ 16 The approach to statutory construction we adopted in *Dodge II*—in which we went beyond the statutory language to interpret its meaning—was appropriate to that case. The language of the statute did not expressly address grandparent visitation and was not limited to cases involving only parents. Here, however, A.R.S. § 25–408 contains precise language. Section 25–408 is limited to parents, and there is no uncertainty or ambiguity to the meaning of that word as used in that statute. Therefore, we are not in a position to apply other principles of statutory construction. *U.S. West Communications, Inc. v. City of Tucson,* 198 Ariz. 515, 520, ¶ 12, 11 P.3d 1054, 1059 (App.2000) ("When statutory language is clear, unequivocal, and unambiguous, this court must give effect to the language and may not invoke the rules of statutory construction to interpret it."). Our interpretation of A.R.S. § 25–408 must end with an analysis of its plain language. We cannot extend the procedures

---

**6.** See *People's Choice TV Corp., Inc. v. City of Tucson,* 202 Ariz. 401, 403, ¶ 8, 46 P.3d 412, 414 (2002) ("[W]e 'look to statutes on the same subject matter to determine legislative intent and to maintain statutory harmony.' " (quoting *In re Robert A.,* 199 Ariz. 485, 487, ¶ 8, 19 P.3d 626, 628 (App.2001))).

and protections of A.R.S. § 25–408 to grandparents. *See State ex rel. Morrison v. Anway,* 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) ("[C]ourts cannot read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself."); *State v. Heinze,* 196 Ariz. 126, 132, ¶ 26, 993 P.2d 1090, 1096 (App.1999) ("We cannot enlarge, . . . expand or extend a statute to matters not falling within its express provisions.") (internal quotation marks and citation omitted).[7]

¶ 17 Finally, Grandmother contends that interpreting A.R.S. § 25–408 as excluding non-parents would effectively leave grandparents without a remedy when their court-ordered visitation rights are violated. However, A.R.S. § 25–414 (2007) sets forth a number of remedies a court may employ if "a parent has refused without good cause to comply with a visitation or parenting time order." A.R.S. § 25–414(A); *see also Dodge II,* 197 Ariz. at 598, ¶¶ 17–20, 5 P.3d at 932 (rejecting the argument that A.R.S. § 25–414 applies only to disputes between parents and is inapplicable to grandparent visitation). In addition, a court may exercise its inherent contempt power to remedy a violation of a court order. *See Holt v. Hotham ex rel. County of Maricopa,* 197 Ariz. 614, 616, ¶ 11, 5 P.3d 948, 950 (App.2000) ("[T]he power to punish for contempt is inherent in the trial court.").

¶ 18 We therefore agree with the superior court. Section 25–408 does not apply to grandparent visitation and Grandmother was not entitled to enforce her visitation rights under it.

### C. Attorneys' Fees on Appeal

¶ 19 Mother and Grandmother have both requested an award of attorneys' fees on appeal pursuant to A.R.S. § 25–324 (2007). Under that statute, attorneys' fees may be awarded upon consideration of the parties' financial resources and the reasonableness of the positions taken.[8] Although we have rejected Grandmother's interpretation of A.R.S. § 25–408, her position and Mother's position were both reasonable. Given this, and because the parties have not provided us with any information about their financial resources, we deny their requests for fees on appeal. Because Mother is the prevailing party, however, she may recover her costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21(a).

### CONCLUSION

¶ 20 For the foregoing reasons, we affirm the superior court's determination that A.R.S. § 25–408 is not applicable to court awarded grandparent visitation.

CONCURRING: PATRICK IRVINE, Presiding Judge and SHELDON H. WEISBERG, Judge.

---

7. We note that in 2001, throughout the marital relations statutes, the legislature "[r]eplace[d the term] 'visitation' with 'parenting time' . . . when referring to a parent" and "[a]dd[ed] 'or parenting time' to 'visitation' in statutes applicable to a parent *or another person spending time with a child through court order.*" *Ariz. State Senate Fact Sheet for H.B. 2026,* 45th Leg., 1st Reg. Sess. (Ariz.2001) (emphasis added). This change was made to "reflect a more collaborative approach to parenting children that acknowledge[s] the contributions of both parents." *Id.* The legislature did not, however, modify A.R.S. § 25–408 to include visitation rights for grandparents or other non-parents. Additionally, the legislature did not replace the term "visitation" with "parenting time" in A.R.S. § 25–409, the statute

which provides grandparents with visitation rights. This further supports our conclusion that A.R.S. § 25–408 only applies to parents.

8. Section 25–324(A) authorizes a court to "order a party to pay a reasonable amount to the other party for the cost and expenses of maintaining or defending any proceeding" in a dissolution case or under "chapter 4, Article 1 of [Title 25]" of our state's statutes. Chapter 4, Article 1 of Title 25 consists of this state's statutes concerning child custody and parental and grandparent visitation orders. Accordingly, this proceeding was brought under Chapter 4, Article 1 of Title 25, and Mother and Grandmother are each entitled to request an award of fees under this statute.