FILED BY CLERK

OCT 16 2012

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ELIZABETH W., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2 CA-SA 2012-0060 |
| | ) | DEPARTMENT A |
| HON. JOSEPH R. GEORGINI, Judge of | ) | |
| the Superior Court of the State of Arizona, | ) | O P I N I O N |
| in and for the County of Pinal, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF ARIZONA, by and | ) | |
| through the Pinal County Attorney, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pinal County Cause No. MH201100027

JURISDICTION ACCEPTED; RELIEF GRANTED

Mary Wisdom, Pinal County Public Defender
  By Lisa M. Surhio                                                                    Florence
                                                          Attorneys for Petitioner

James P. Walsh, Pinal County Attorney
  By Seymour G. Gruber                                                                Florence
                                                 Attorneys for Real Party in Interest

E C K E R S T R O M, Presiding Judge.

¶1 In this special action, Elizabeth W. challenges the respondent judge's order that she undergo urinalysis drug testing. Elizabeth also challenges the respondent's subsequent refusal to destroy the test results and the sample obtained. We accept jurisdiction and grant relief.

¶2 In March 2011, the superior court ordered Elizabeth to undergo involuntary mental health treatment after finding she was a danger to herself and others and was persistently or acutely disabled. The court ordered a year of combined inpatient and outpatient treatment, appointing the Pinal Hispanic Council to supervise and administer her outpatient treatment. In March 2012, pursuant to the Council's request, the respondent judge continued Elizabeth's treatment for an additional year. The respondent also scheduled periodic review hearings.

¶3 At the review hearing held on June 27, 2012, Elizabeth informed the respondent judge that she suffered side effects from her medication and complained that she needed "stability" and a "place to live." She admitted, however, to using marijuana. The respondent confirmed that the Council was working to find stable independent housing for Elizabeth but informed her that "not using illegal drugs" was "more important than stability." The respondent set another review hearing to evaluate Elizabeth's medication and ordered Elizabeth to immediately accompany an officer to provide a urine sample for testing "to make sure that [she was] . . . not doing more than marijuana."

¶4 Later that day, a public defender appearing on Elizabeth's behalf argued the respondent judge had no authority to order Elizabeth to participate in a urinalysis because

2

she was "not on probation" and had been "charged with no crime." Counsel requested that any sample already provided be destroyed before analysis. The respondent rejected that argument, concluding "[t]his is a Court-ordered treatment" and it could facilitate its treatment order by requiring Elizabeth to submit to urinalysis. The respondent, however, did order that the urinalysis results "be sealed . . . [and] made part of this file only."

**¶5**        "Whether to accept special action jurisdiction is for this court to decide in the exercise of our discretion." *Potter v. Vanderpool*, 225 Ariz. 495, ¶ 6, 240 P.3d 1257, 1260 (App. 2010). Special action review is not available "where there is an equally plain, speedy, and adequate remedy by appeal." Ariz. R. P. Spec. Actions 1(a). Section 36-546.01, A.R.S., permits the appeal of "[a]n order for court ordered treatment" but also permits review by special action. It is not clear whether the respondent judge's order here constitutes an order for treatment made appealable pursuant to § 36-546.01 or instead an interlocutory order intended to enforce the existing order for treatment that is therefore appropriate for special action review. *See Potter*, 225 Ariz. 495, ¶ 7, 240 P.3d at 1260 (acceptance of special action jurisdiction appropriate to review interlocutory orders). Consequently, Elizabeth's remedy by appeal, if it exists, "is not 'equally plain' compared to [her] remedy by special action," and we properly may exercise our discretionary special action jurisdiction. *State v. Bernini*, 230 Ariz. 223, ¶ 5, 282 P.3d 424, 426 (App. 2012), *quoting* Ariz. R. P. Spec. Actions 1(a); *see also Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 493, 949 P.2d 983, 986 (App. 1997) ("[T]he availability of an appeal does not foreclose the exercise of this court's discretion to accept jurisdiction."). Moreover, the question presented here is purely legal and therefore is

3

particularly appropriate for special action review. *See State ex rel. Romley v. Martin*, 203 Ariz. 46, ¶ 4, 49 P.3d 1142, 1143 (App. 2002) ("Special action jurisdiction is appropriate in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again."), *aff'd*, 205 Ariz. 279, 69 P.3d 1000 (2003). Accordingly, in our discretion, we accept jurisdiction of Elizabeth's special action.

¶6 Elizabeth first argues the respondent judge had "no authority to set routine review hearings or issue orders at those hearings," including ordering her to submit to a drug test, because the statutes in title 36, chapter 5, governing court-ordered mental health treatment do not give a trial court that express authority. She maintains those statutes are narrowly tailored and must be followed strictly to comport with due process, and had the legislature intended a trial court to hold review hearings and issue orders during treatment, it would have so provided in the statutory scheme. *See In re MH 2007-001264*, 218 Ariz. 538, ¶ 6, 189 P.3d 1111, 1112 (App. 2008) ("[T]he statutes pertaining to court-ordered treatment have been narrowly tailored by the legislature and must be strictly followed.").

¶7 The state counters that a trial court's inherent common-law authority to sanction parties for failing to comply with its orders and issue orders "to carry out and give effect to [its] exercise of jurisdiction" permitted the respondent judge to order Elizabeth to submit to drug testing. *See* A.R.S. §§ 12-122, 12-123(B); *Fenton v. Howard*, 118 Ariz. 119, 121, 575 P.2d 318, 320 (1978) ("Every court has inherent power to do those things which are necessary for the efficient exercise of its jurisdiction."); *Sheehan*

4

*v. Flower*, 217 Ariz. 39, ¶ 17, 170 P.3d 288, 292 (App. 2007) ("[A] court may exercise its inherent contempt power to remedy a violation of a court order."). The state points out that Elizabeth had been ordered to comply with the treatment plan and that the plan restricted her use of "substances/drugs." Thus, the state reasons, the respondent was permitted to order her to submit to urinalysis to determine "whether [she] was following the treatment plan and in what way she was not following the plan."

¶8 The state acknowledges, however, that a trial court's inherent powers end where statutes and rules begin. "Where statutes and rules exist covering the situation it is unnecessary and improper to look to the common law for inherent powers." *Campbell v. Thurman*, 96 Ariz. 212, 214, 393 P.2d 906, 908 (1964). This restriction is of particular import here because, due to the liberty and due process concerns presented by court-ordered involuntary treatment, the statutes governing such treatment must be construed narrowly and followed strictly. *See In re MH2011-000914*, 229 Ariz. 312, ¶ 7, 275 P.3d 611, 613 (App. 2012); *MH 2007-001264*, 218 Ariz. 538, ¶ 6, 189 P.3d at 1112. Thus, although a trial court has the inherent power to ensure its orders are followed, it may not exercise that power in a way that conflicts with the statutory scheme.

¶9 But the state asserts, citing A.R.S. § 36-540, that title 36 does not encompass a situation where a court is "confronted with a patient who has voluntarily admitted to non-compliance [with a treatment plan but] who does not need inpatient treatment nor . . . immediate acute inpatient care." Thus, the state reasons, because the statutory scheme does not encompass that situation, "there is nothing statutorily to adhere to and nothing to strictly follow."

¶10      Even if we accept the state's premise that a court's inherent authority would permit it to take action based on a purported gap in the statutory scheme, the state's argument fails nonetheless. The state is incorrect that § 36-540 does not encompass that circumstance. Subsection (E)(4) states:

> During any period of outpatient treatment . . . , if the court, on motion by the medical director of the patient's outpatient mental health treatment facility, determines that the patient is not complying with the terms of the order or that the outpatient treatment plan is no longer appropriate and the patient needs inpatient treatment, the court, . . . may enter an order amending its original order. The amended order may alter the outpatient treatment plan or order the patient to inpatient treatment . . . .

Thus, a trial court has the authority to determine whether a patient is noncompliant with an ordered treatment plan and, if it so finds, may modify the existing outpatient treatment plan or instead require inpatient treatment. But the statute provides a court no authority to do so in the absence of a motion by the medical director.[1] Nor can we construe that apparent requirement as merely precatory. In 1992, the legislature amended § 36-540(E)(4) specifically to add the language requiring a motion by the medical director before a court could modify a treatment order. 1992 Ariz. Sess. Laws 2d Reg. Sess., ch. 234, § 2. No such motion was made here. Therefore, despite the respondent judge's well-intentioned interest in assisting Elizabeth to better comply with her treatment plan,

---

[1] Under A.R.S. § 36-540.01(B)(4), an outpatient treatment plan "approved by the medical director" may require that the patient submit to testing.

6

he had no authority to order her to undergo urinalysis to determine whether she was in compliance with that plan.[2]

¶11 For the reasons stated, we accept jurisdiction and grant relief. We instruct the respondent judge to expunge from the record the results of Elizabeth's urinalysis and to order that any remaining sample or samples be destroyed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed August 15, 2012.

---

[2]We need not address further Elizabeth's broader contention that a trial court has no authority to conduct review hearings and make orders at such hearings. Nor need we reach her additional arguments that the respondent judge lacked authority to take her into custody for the purposes of drug testing, that a trial court can never order drug testing in a civil commitment proceeding, or that the drug testing here violated her Fourth Amendment rights.