NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOHN and ROBIN KAYSER, *Petitioners/Appellees*,

*v.*

MATTHEW YOUNG, *Respondent/Appellant*.

No. 1 CA-CV 21-0424 FC
FILED 5-5-2022

Appeal from the Superior Court in Mohave County
No. L8015D0200907082
The Honorable Kenneth Gregory, Judge *Pro Tempore*

**AFFIRMED IN PART;
VACATED AND REMANDED IN PART**

APPEARANCES

John and Robin Kayser, Lake Havasu City
*Petitioners/Appellees*

Aspey, Watkins & Diesel, PLLC, Flagstaff
By Zachary J. Markham, Zacharias N. Hope
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which
Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

**G A S S**, Vice Chief Judge:

¶1          This case arises over maternal grandparents' request for visitation with their grandchild following the birth mother's death in 2017. The superior court granted grandparents' request over father's objection. Father appeals the superior court's orders granting visitation between grandparents and the child, requiring father "not unreasonably" interfere with grandparents' communications with the child, and restricting father's ability to relocate. The superior court also awarded attorney fees to grandparents, which father appeals. We affirm the visitation and communication orders, but we vacate the attorney-fee and relocation orders.

## FACTUAL AND PROCEDURAL HISTORY

¶2          This court views the facts in the light most favorable to sustaining the superior court's orders. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019).

¶3          Four months after the child's birth, father and birth mother experienced financial difficulties, so the three moved into grandparents' home. Within three months, birth mother "was diagnosed with Stage 4 breast cancer." While birth mother was receiving intensive care and father was working, grandparents cared for the child. The multigenerational family lived together for four years until birth mother passed in 2017.

¶4          Father, grandparents, and the child continued living together for eight months. Father soon began dating a woman (adoptive mother). They married and adoptive mother adopted the child. Meanwhile, the relationship between father and grandparents became strained. Father alleged grandparents introduced the child to lewd content, had public outbursts, had alcohol and drug problems, and emotionally dumped their grief over their daughter's death on the child. Father also harbored resentment toward grandparents because he believed he retained an interest in a home they purchased. As a result, father severely limited grandparents' interactions with the child.

¶5          Grandparents petitioned for third-party visitation rights with the child, which father opposed. After an evidentiary hearing, the superior court awarded grandparents a gradual visitation schedule culminating in one weekend and one dinner per month, and two separate two-week blocks during summer breaks. The court also ordered the parties to "not

unreasonably restrict the [child's] communication" with grandparents and ordered father not to relocate unless he complied with A.R.S. § 25-408.

¶6            Father later raised allegations from the grandparents' former daughter-in-law regarding previously unaddressed concerns. Based on the new concerns and to allow adoptive mother an opportunity to testify, the superior court set a second evidentiary hearing to reconsider its earlier ruling.

¶7            At the second evidentiary hearing, adoptive mother testified she believed visitation should be initially limited. Accounting for adoptive mother's concerns, the superior court reduced the visitation award to one nine-hour block per month and one week each summer. The superior court retained the relocation and communication orders, and later awarded grandparents attorney fees under A.R.S. § 25-324.A. Father timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.2.

## ANALYSIS

¶8            Father contests the superior court's visitation, communication, relocation, and attorney-fee orders. We address each in turn.

### I.      Best-Interests Analysis

¶9            Father argues the superior court abused its discretion in awarding visitation to grandparents by "(1) failing to properly weigh the evidence that [father] presented showing that visitation is contrary to the best interests of the child [and] (2) failing to give 'special weight' to [father]'s opinion on whether visitation is in the best interests of the child." We disagree.

¶10           This court reviews an order awarding visitation to grandparents for abuse of discretion. *McGovern v. McGovern*, 201 Ariz. 172, 175, ¶ 6 (App. 2001). An abuse of discretion occurs when the superior court commits an error of law in reaching a discretionary conclusion or when no competent evidence supports the superior court's decision. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018); *see also Pridgeon v. Super. Ct.*, 134 Ariz. 177, 179 (1982) ("a clear absence of evidence" warrants reversal).

¶11           Section 25-409 governs third-party visitation rights. That statute says, "[i]n deciding whether to grant visitation to a third party, the [superior] court shall give *special weight* to the legal parents' opinion of what

serves their child's best interests." A.R.S. § 25-409.E (emphasis added). The statute also provides a non-exhaustive list of "relevant factors" the superior court shall consider. A.R.S. § 25-409.E.1–5.

## A. Sufficiency of the Analysis and Evidence

¶12 Here, the superior court considered each of the enumerated best-interests factors in its first order, describing in detail its relevant factual findings. It later reiterated its earlier findings in its second order. Father argues the superior court did not adequately consider testimony about maternal grandmother's emotional breakdowns and public outbursts, an investigator's report advising against unsupervised visitation, and adoptive mother's testimony regarding psychological trauma to the child.

¶13 To begin, the superior court did consider that evidence. It considered the investigator's report because it explicitly referenced the report in its first order. The superior court also quoted the investigator's belief the relationship was "significant" and loving, and that a continued relationship would be "very important." The superior court further held a separate hearing to consider adoptive mother's testimony.

¶14 Next, the superior court's findings were sufficient. The superior court need not reference every fact presented at trial. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999); *see also Reid v. Reid*, 222 Ariz. 204, 209, ¶¶ 18–19 (App. 2009). Rather, it must provide sufficient information to permit meaningful review, and this court then "examine[s] the record only to determine whether substantial evidence exists to support" its action. *Pouser*, 193 Ariz. at 579, ¶ 13. Here, the superior court found grandparents had a significant relationship with the child because the family moved into their home when the child was an infant and lived with them for four years. Grandparents helped care for the child throughout mother's cancer treatment. In weighing this "significant historical relationship" and the other best-interests factors against father's opposition to visitation and his various factual allegations, the superior court determined visitation was appropriate. The superior court is best positioned to resolve conflicting evidence, and this court does not reweigh the evidence on appeal. *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 18 (App. 2015); *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Accordingly, sufficient evidence supports the superior court's factual findings and best-interests determination.

**B. Special Weight**

¶15 Father next argues the superior court did not afford special weight to his opinion against visitation. We disagree.

¶16 Two "constitutionally based principles" guide any third-party visitation analysis. *McGovern*, 201 Ariz. at 177, ¶ 17. "First, 'the court should recognize and apply a [rebuttable] presumption that a fit parent acts in his or her child's best interest in . . . [making] decisions concerning grandparent visitation." *In re Marriage of Friedman*, 244 Ariz. 111, 116, ¶ 16 (2018) (quoting *McGovern*, 201 Ariz. at 177, ¶ 17) (alterations in original). "Second, courts must afford some special weight to a fit parent's determination of whether visitation is in the child's best interests and significant weight to a parent's voluntary agreement to some visitation, albeit not as much visitation as the grandparent desires." *Id.* (cleaned up). Further, when a child has two legal parents, "each of their opinions on visitation is entitled to 'special weight.'" *Id.* at 117, ¶ 22 (citing A.R.S. § 25-409.E). Special weight describes "the deference courts must afford a parent's visitation opinion, which prevents state interference with parents' fundamental right to make decisions concerning the rearing of their children." *Id.* at 115, 116–17, ¶¶ 14, 19 (quoting *Troxel v. Granville*, 530 U.S. 57, 68 (2000) (plurality opinion)) (cleaned up).

¶17 In both orders, the superior court recognized it must afford special weight to a parent's best-interests opinion by referencing § 25-409.E's special-weight provision. Indeed, the superior court held a second evidentiary hearing, in part, to provide adoptive mother an opportunity to testify about her visitation opinion after she failed to testify at the first hearing. At the second hearing, adoptive mother testified she would prefer initially limiting visitation and restricting overnights. The superior court complied with *McGovern* by affording her opinion "significant weight" and reducing its earlier allocation of visitation to grandparents. *See* 201 Ariz. at 177, ¶ 18.

¶18 Father opposed visitation and requested the court grant only monthly, one-hour, supervised visits with grandparents. He argued maternal grandmother was emotionally dumping on the child, maternal grandfather introduced the child to sexually inappropriate material, both grandparents undermined his parenting and triggered the child's anxiety, and the investigator's report showed the child was flourishing without them. The superior court found father's allegations were unsubstantiated and were based on "bitterness and resentment over a real estate dispute" that caused a rift between father and grandparents.

¶19            In making its findings, the superior court did not fail to accord father's opinion special weight. Though the superior court must give special deference to a parent's best-interests opinion, it need not give special weight to alleged facts supporting a parents' position. *See Vincent*, 238 Ariz. at 155, ¶ 18 (the superior court "is in the best position to judge the credibility of witnesses and resolve conflicting evidence").

¶20            Further, the superior court gave father's opinion special weight but then found animus—as opposed to the child's best interests—motivated father. The "amount of weight" necessary to satisfy the special-weight requirement must be decided "on a case-by-case basis." *McGovern*, 201 Ariz. at 178, ¶ 18 (citation omitted). This court will not second-guess credibility determinations, such as the superior court's determination regarding father's motivation. *See Vincent*, 238 Ariz. at 155, ¶ 18. The superior court implicitly found grandparents rebutted the presumption father was acting in his child's best interests by opposing visitation. *See McGovern*, 201 Ariz. at 177, ¶ 17. It then found the best-interests factors overcame the special weight owed to father's opinion, despite his opposition to visitation. The superior court acted within its discretion in doing so. *See id.* at 178, ¶ 19 (the special-weight principle "affect[s] but do[es] not necessarily control a [superior] court's determinations").

¶21            In sum, the superior court did not abuse its discretion in awarding visitation to grandparents because sufficient evidence supported its best-interests findings, and it gave special weight to the parents' opinions on visitation.

## II.    Communication and Relocation

¶22            Father also challenges the superior court's communication and relocation orders. First, he argues the order requiring him to not "unreasonably restrict the child['s] communication" with grandparents unconstitutionally intruded on his parental rights.

¶23            "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). Ancillary orders related to a visitation order may violate a parent's ability to exercise parental control if they impermissibly "impinge directly on [parents'] communication" with their children. *Graville v. Dodge*, 195 Ariz. 119, 128, ¶ 42 (App. 1999).

¶24            Father argues *Graville* supports his challenge to the communication order. In *Graville*, this court struck orders requiring parents

"to encourage weekly telephone calls [with grandparents], to consider [grandparents] as potential babysitters, and to refrain from discussing custody issues with the children." *Id.* This court struck those orders because they directly impinged on parental communication. *Id.* But the *Graville* court recognized the third-party visitation statute confers discretion to the superior court to fashion ancillary orders to effectuate the visitation plan so long as they "minimal[ly] interfere[ ]" with parental control. *Id.* It applied that principle in upholding orders for the parents to "provide [grandparents] with telephone number and address changes and to keep [them] informed about important events" because they were minimally intrusive. *Id.*

**¶25** Here, the superior court's communication order resembles the minimally intrusive orders from *Graville*. The superior court did not co-opt father's parental authority by ordering father to engage in specific forms of communication with his child. Instead, it prohibited him from presenting an active and unreasonable obstacle to his child's contact with grandparents. We cannot say the requirement is overly intrusive or facially unconstitutional. *See id.*

**¶26** Next, father argues the superior court abused its discretion when it ordered him to comply with § 25-408's relocation requirements. Grandparents concede the error. Indeed, this court has held § 25-408 does not apply to grandparent visitation. *Sheehan v. Flower*, 217 Ariz. 39, 40–43, ¶¶ 10–18 (App. 2007). Accordingly, we vacate the superior court's order requiring father to comply with § 25-408 before he relocates.

## III. Attorney Fees in the Superior Court

**¶27** Finally, father challenges the superior court's attorney-fee award, saying (1) the superior court may not award attorney fees under § 25-324.A to the party with greater financial resources absent extreme unreasonableness, and (2) father did not take unreasonable litigation positions. Because our resolution of his second argument is dispositive, we do not address the first.

**¶28** Section 25-324.A vests the superior court with discretion to award attorney fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." This court reviews an award of attorney fees under § 25-324 for abuse of discretion. *Rinegar v. Rinegar*, 231 Ariz. 85, 90, ¶ 22 (App. 2012). In doing so, this court will "defer to the [superior] court's

factual findings so long as there is competent evidence to support them." *Quijada v. Quijada*, 246 Ariz. 217, 222, ¶ 13 (App. 2019).

**¶29** Father argues he did not take unreasonable positions in the superior court. The superior court disagreed, finding father's positions unreasonable because he failed to call adoptive mother as a witness at the first hearing "despite the statutory priority given to the preferences of legal parents," he was fixated on an immaterial real-estate dispute, and he "acted like a 'dictator'" in depriving grandparents of visitation with their grandchild.

**¶30** The record shows father failed to call adoptive mother at the first evidentiary hearing, which partially created the need for a second evidentiary hearing and further litigation. But the superior court's other reasonableness findings relate to positions father took before this litigation commenced. Section 25-324.A requires the court to consider whether a party's positions during—not before—litigation were reasonable.

**¶31** By basing the attorney-fee award, in part, on actions father took outside of and before this litigation, the superior court abused its discretion. *See Engstrom*, 243 Ariz. at 471, ¶ 4. Accordingly, we vacate and remand the attorney-fee award.

## ATTORNEY FEES

**¶32** Both parties request attorney fees on appeal under A.R.S. § 25-324. Grandparents are self-represented litigants and are not entitled to attorney fees. *See Munger Chadwick, P.L.C. v. Farwest Dev. and Constr. of the Sw., LLC*, 235 Ariz. 125, 126, ¶ 5 (App. 2014). Consistent with the above analysis, this court may award attorney fees after consideration of the financial resources and the reasonableness of the parties' legal positions. A.R.S. § 25-324. Grandparents did not take unreasonable positions in this appeal. We lack information on the parties' current financial status but acknowledge father historically has fewer resources than grandparents. After considering the relevant factors, we decline to award father his attorney fees. As the principally successful party on appeal, we award grandparents their costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

**CONCLUSION**

¶**33**      We affirm the superior court's visitation and communication orders. We vacate and remand the attorney-fee order, and we vacate the relocation order.



AMY M. WOOD • Clerk of the Court
FILED:    AA